J-A28001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | No. 290 EDA 2013 |

Appeal from the Order Entered December 19, 2012
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0001882-2012;
CP-51-JV-0001883-2012

BEFORE: GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED DECEMBER 03, 2014**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which discharged Appellee, C.C., from the probation imposed following his adjudication of delinquency. We affirm.

The relevant facts and procedural history of this case are as follows. On August 14, 2012, C.C. admitted to one count of IDSI against his younger, male cousin (when C.C. was fifteen years old). The court adjudicated C.C. delinquent and placed him on probation under the supervision of the Philadelphia Juvenile Probation Department. Additionally, the court ordered C.C. to undergo treatment at the Joseph J. Peters Institute ("JJPI"); to have no unsupervised contact with minor children; to attend school with no unexcused absences, lateness, cutting, or suspensions; to stay away from the complainant; to undergo random drug screens; and to

remain on GPS monitoring.

The court held a review hearing on October 18, 2012. At the review hearing, C.C.'s probation officer informed the court that C.C. was doing very well, earning high grades in school, and complying with probation. The probation officer also indicated C.C. had a positive progress report from JJPI.[1] Based on C.C.'s progress, the probation officer asked the court to remove GPS monitoring and to schedule a subsequent review hearing in sixty days to determine whether to discharge C.C. from probation. The probation officer explained the request for the sixty-day review hearing was due to the implications of the Sexual Offender Notification and Registration Act ("SORNA"). *See* 42 Pa.C.S.A. §§ 9799.10 *et seq*. (effective December 20, 2012).[2] Counsel for C.C. joined the probation officer's recommendation, and the Commonwealth did not object to the removal of GPS monitoring or the timeframe for the next review hearing. Consequently, the court removed GPS monitoring and scheduled a review hearing for December 13,

---

[1] The September 2012 JJPI progress report specified, *inter alia*, that C.C. had completed four individual therapy sessions, took responsibility for his actions and admitted the sexually inappropriate behavior, and was very motivated and engaged in treatment. The report recommended C.C. to continue sexual offense-specific treatment and to have no contact with the complainant. The report classified C.C.'s risk of re-offending as "low to medium." The report estimated the length of C.C.'s needed treatment was 12-13 months.

[2] Under SORNA, juveniles adjudicated delinquent on or after December 20, 2012, **or** juveniles adjudicated delinquent prior to that date but who are still under delinquent supervision as of December 20, 2012, are subject to, *inter alia*, lifetime sex offenders' registration.

2012.

At the December 13, 2012 review hearing, C.C.'s probation officer informed the court that C.C. was complying with treatment, doing very well, and "went above and beyond" in terms of satisfying his supervision requirements. C.C.'s probation officer admitted C.C. still needed treatment from JJPI. Based on C.C.'s progress, and to avoid the SORNA requirements, C.C.'s counsel urged the court to discharge C.C. from probation and have the Department of Human Services ("DHS") file a dependency petition, under which the court could order C.C. to continue treatment at JJPI. The Commonwealth objected to C.C.'s release from probation. The court said it wanted to hear from the complainant's mother (C.C.'s aunt) before it made a decision, so the court directed the Commonwealth to ascertain her wishes.

On December 19, 2012, the complainant's mother appeared before the court.[3] The complainant's mother explained her primary concern was for C.C. to continue treatment. She expressed her belief in "second chances" and did not want to subject C.C. to lifetime registration under SORNA, so long as C.C. continued treatment. The court also admitted into evidence a report from JJPI dated December 10, 2012. The report stated that C.C.

---

[3] One day prior, the parties had appeared before the court, at which time the Commonwealth represented that the complainant's mother opposed C.C.'s release. C.C.'s counsel advised the court that the Commonwealth had failed to inform the complainant's mother of the severity of SORNA's requirements and had told her instead that whether the court discharged C.C. was "no big deal" and would not "affect [C.C.'s] life[.]" As a result, the court rescheduled the hearing for the following day so it could hear directly from the complainant's mother.

began treatment on August 31, 2012, and had completed twelve (12) individual and six (6) group therapy sessions. The report specified, *inter alia*, C.C. exhibited strong participation in therapy; had no unexcused absences; has been eager to engage fully with treatment and has been very open and honest in therapy; C.C. admitted his offense; C.C. has expressed a desire to better understand his actions; and C.C. showed appropriate empathy for the complainant. The report explained C.C.'s probation officer recommended discharging C.C. from probation, and JJPI endorsed that recommendation, with the understanding that C.C. would continue treatment at JJPI until completed. At the conclusion of the hearing, the court discharged C.C. from probation and ordered DHS to file a dependency petition, under which C.C. is required to attend and complete sex offender treatment at JJPI, attend school, have no unsupervised contact with minor children, stay away from the complainant and his family, and submit to random urine screens. The court made clear it would take appropriate action if C.C. failed to comply with the court's directives.

Two days later, the Commonwealth filed a motion for reconsideration on December 21, 2012, which the court denied that day. The Commonwealth timely filed a notice of appeal on January 18, 2013, and a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Commonwealth raises one issue for our review:

WHERE [C.C.] PLEADED GUILTY TO [IDSI] AGAINST A CHILD VICTIM AS A FELONY OF THE FIRST DEGREE, DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN DISCHARGING HIM FROM PROBATION LESS THAN FIVE MONTHS FOLLOWING HIS ADJUDICATION?

(Commonwealth's Brief at 4).

The Commonwealth argues the court adjudicated C.C. delinquent based on C.C.'s admission to IDSI against his younger, male cousin and C.C.'s need for treatment and supervision. The Commonwealth asserts the court directed C.C. to undergo treatment at JJPI, which projected the length of treatment as 12-13 months. The Commonwealth maintains that at the December 19, 2012 hearing, the Commonwealth, JJPI, C.C.'s probation officer, C.C.'s counsel, the complainant's mother, and the court agreed C.C. still needed treatment, supervision, and rehabilitation. On this basis, the Commonwealth contends C.C. is still a delinquent child pursuant to the Juvenile Act when the court discharged C.C. from probation. The Commonwealth claims the court's determination that treating C.C. as a dependent child rather than a delinquent child was erroneous, where C.C. does not meet the definition of a dependent child. The Commonwealth submits the court's treatment of C.C. greatly reduced the court's ability to supervise C.C., as an adjudication of delinquency allows the court to place the delinquent child under the supervision of a probation officer, whereas an adjudication of dependency does not.

The Commonwealth avers the court's decision to terminate C.C.'s

probation also frustrated the purposes of the Juvenile Act to protect the community, impose accountability for offenses committed, and develop competencies to enable children to become responsible and productive members of the community. The Commonwealth suggests the court ignored these functions of the Juvenile Act and considered only C.C.'s best interests. The Commonwealth emphasizes that the court discharged C.C.'s probation solely to avoid the SORNA implications, a result the court cannot compel simply because the court disagrees with the legislative determination that SORNA mandates lifetime registration for juvenile sex offenders adjudicated delinquent of certain sex offenses. The Commonwealth highlights that C.C. knew about the implications of SORNA when he admitted to IDSI. The Commonwealth concludes the court abused its discretion by discharging C.C.'s probation, and this Court must reinstate C.C.'s delinquency probation. We disagree.

Our review of a juvenile court's disposition implicates the following principles:

> Our standard of review of dispositional orders in juvenile proceedings is well settled. "The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." *In re R.D.R.,* 876 A.2d 1009, 1013 (Pa.Super. 2005) (internal citation omitted). Moreover, "[a] petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act. Dispositions which are not set forth in the Act are beyond the power of the juvenile court." *In re J.J.*, 848 A.2d 1014, 1016-17 (Pa.Super. 2004) (citation omitted).

***Commonwealth v. B.D.G.***, 959 A.2d 362, 366-67 (Pa.Super. 2008) (*en banc*). Further, the purpose of the Juvenile Act is as follows:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
>
> 42 Pa.C.S.A. § 6301(b)(2). This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents.

***In re L.A.***, 853 A.2d 388, 394 (Pa.Super. 2004) (some internal citations and quotation marks omitted). "The rehabilitative purpose of the Juvenile Act is attained though accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community." ***In re R.D.R., supra*** (quoting ***In re B.T.C.***, 868 A.2d 1203, 1205 (Pa.Super. 2005)).

The Juvenile Act defines a delinquent child as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment." 42 Pa.C.S.A. § 6302. IDSI constitutes a delinquent act. ***See id.*** Section 6352(a) of the Juvenile Act sets forth the available dispositions for a delinquent child as follows:

### § 6352. Disposition of delinquent child

**(a) General rule.**—If the child is found to be a delinquent child the court may make any of the following

orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

> (1) **Any order authorized by section 6351 (relating to disposition of dependent child)**.

> (2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in section 6363 (relating to ordering foreign supervision), under conditions and limitations the court prescribes.

> \* \* \*

In selecting from the alternatives set forth in this section, the court shall follow the general principle that the disposition imposed should provide the means through which the provisions of this chapter are executed and enforced consistent with section 6301(b) (relating to purposes) and when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child.

42 Pa.C.S.A. § 6352(a)(1), (a)(2) (emphasis added).

The Juvenile Act defines a dependent child as a child who, *inter alia*, "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302. Section 6351(a) of the Juvenile Act sets forth the available dispositions for a dependent child, in

pertinent part, as follows:

**§ 6351. Disposition of dependent child**

**(a) General rule.**—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

\* \* \*

42 Pa.C.S.A. § 6351(a)(1).

The General Assembly enacted SORNA on December 20, 2011, and amended it on July 5, 2012. SORNA became effective December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10 *et seq*. SORNA defines "juvenile offender" as an individual who was 14 years of age or older at the time the individual committed an offense which, if committed by an adult, would be classified as, *inter alia*, an offense under 18 Pa.C.S.A § 3123 (relating to IDSI) and either: (i) is adjudicated delinquent for such offense on or after December 20, 2012; or (ii) has been adjudicated delinquent for such offense and on December 20, 2012, is subject to the jurisdiction of the court on the basis of that adjudication of delinquency. 42 Pa.C.S.A. § 9799.12. Juvenile offenders are required to register for life under SORNA. 42 Pa.C.S.A. § 9799.15(a)(4) (stating: "A juvenile offender who was adjudicated in this Commonwealth…shall register for life of the individual"). SORNA also

requires juvenile offenders to verify their registration quarterly. 42 Pa.C.S.A. § 9799.25(a)(5). SORNA imposes harsh penalties for juvenile offenders who fail to register or fail to verify their registration. *See* 42 Pa.C.S.A. § 9799.21(a). A juvenile offender must wait twenty-five (25) years to petition the court for termination of the registration requirement. 42 Pa.C.S.A. § 9799.17(a).

Instantly, the court explained its rationale for discharging C.C.'s probation before the effective date of SORNA as follows:

> When fashioning a disposition for [C.C.], this [c]ourt properly considered [C.C.'s] prior treatment, supervision, rehabilitation, and welfare while attempting to impose the necessary treatment required consistent with the public's protection and [C.C.'s] own rehabilitative needs. An abuse of discretion is not shown merely by an error in judgment. The Commonwealth failed to establish that the [c]ourt ignored or misapplied the law, exercised [its] judgment for reasons of partiality, prejudice, bias, or ill-will, or arrived at a manifestly unreasonable decision in [C.C.'s] disposition and commitment.
>
> In this juvenile proceeding, this [c]ourt stands *in parens patriae* in relation to the juvenile, and the focus of the proceeding is dedicated to **the best interests** of the juvenile. With respect to this [c]ourt's authority to impose a disposition of a delinquent child, the Juvenile Act grants broad discretion to the [c]ourt. A reviewing court should not disturb a [trial] court's disposition absent manifest abuse of discretion.
>
> \* \* \*
>
> "The Juvenile Act requires the trial judge to consider the protection of the public interest, and to fashion a sentence which is best suited to the child's treatment, supervision, rehabilitation, and welfare, under the individual circumstances of each child's case." [***In re R.W.***, 855

- 10 -

A.2d 107, 111 (Pa.Super. 2004)]. When fashioning a proper disposition for [C.C.], this [c]ourt considered [C.C.'s] history of successful treatment, supervision, rehabilitation, the [complainant's] mother's own stated wishes for [C.C.], and the stigma and harsh realities of [C.C.] being given the life-long label of a "Juvenile Offender" under SORNA. This [c]ourt believes that it was in the best interest of [C.C.'s] own rehabilitative treatment needs to treat him as a Dependent Child rather than a Delinquent Child.

(Juvenile Court Opinion, filed June 27, 2013, at 9-12) (some internal citations omitted) (emphasis in original). The record makes clear the court considered all relevant factors when rendering its disposition, in light of the Juvenile Act's dual purpose to protect the community while rehabilitating and reforming juvenile delinquents. *See* 42 Pa.C.S.A. § 6301(b)(2); *In re L.A., supra*.

Further, after adjudicating C.C. delinquent, the court had authority to enter any of the dispositions set forth in Section 6352(a). *See* 42 Pa.C.S.A. § 6352(a). The court decided to place C.C. on probation per Section 6352(a)(2). *See id.* During C.C.'s review hearings, the court learned about C.C.'s significant progress in treatment. Specifically, at the October 18, 2012 review hearing, C.C.'s probation officer informed the court that C.C. was doing very well, earning high grades in school, and complying with probation. The probation officer indicated C.C. had a positive progress report from JJPI. At that time, the probation officer asked the court to remove C.C.'s GPS monitoring, and the court granted that unopposed request.

Subsequently, at the December 13, 2012 review hearing, C.C.'s probation officer informed the court C.C. was complying with treatment, doing very well, and "went above and beyond" in terms of satisfying his supervision requirements. Based on C.C.'s progress and to avoid the SORNA requirements, C.C.'s counsel urged the court to release C.C. from juvenile probation and have DHS file a dependency petition, under which the court could order C.C. to continue treatment at JJPI. The Commonwealth objected to this request, so the court deferred its ruling.

The court heard from the complainant's mother at a hearing on December 19, 2012. The complainant's mother explained her primary concern was for C.C. to continue treatment. She expressed her belief in "second chances" and did not want to subject C.C. to lifetime registration under SORNA, so long as C.C. still received treatment. The court also admitted into evidence a report from JJPI dated December 10, 2012, which reflected C.C.'s substantial progress. Notably, the report indicated that JJPI endorsed the recommendation of C.C.'s probation officer, to discharge C.C. from probation with the understanding that C.C. would continue treatment at JJPI. At the conclusion of the hearing, the court terminated probation and ordered DHS to file a dependency petition, under which C.C. is required, *inter alia*, to attend and complete sex offender treatment at JJPI. The court made clear it would take appropriate action if C.C. failed to comply with the court's directives.

The court's decision to terminate C.C.'s probation and require C.C. to continue treatment under a dependency order falls within the court's available options per Section 6352(a). ***See*** 42 Pa.C.S.A. § 6352(a)(1). The court permitted C.C. to remain with his parents, subject to the conditions and limitations prescribed by the court. ***See*** 42 Pa.C.S.A. § 6351(a)(1). In its decision, the court recognized the strict consequences C.C. faced if he remained on juvenile probation through SORNA's effective date. ***See*** 42 Pa.C.S.A. §§ 9799.15(a)(4); 9799.17(a); 9799.21(a); 9799.25(a)(5). Thus, the court released C.C. from juvenile probation, consistent with the protection of the public interest and best suited to C.C.'s need for treatment, supervision, and rehabilitation. ***See*** 42 Pa.C.S.A. § 6352(a). We see no manifest abuse of discretion in the court's decision to terminate C.C.'s juvenile probation and compel institution of dependency proceedings as a viable alternative under the circumstances of this case. ***See B.D.G., supra***. Accordingly, we affirm.

Order affirmed.

Judge Wecht joins this memorandum.

Judge Jenkins files a dissenting statement.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2014

- 13 -