J-S56010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.J.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.J.H., A MINOR | No. 1753 MDA 2015 |

Appeal from the Dispositional Order Entered August 10, 2015
In the Court of Common Pleas of Dauphin County
Juvenile Division at No(s): CP-22-JV-0000410-2015

BEFORE:  BENDER, P.J.E., PANELLA, J. and STEVENS, P.J.E.*

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 16, 2016**

J.J.H., a minor, appeals from the dispositional order entered on August 10, 2015, following the adjudication of his delinquency for acts constituting receiving stolen property, 18 Pa.C.S. § 3925(a).  On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his adjudication.  After careful review, we affirm.

We have reviewed the certified record, the briefs of the parties, and the applicable law.  We have also reviewed the thorough Pa.R.A.P. 1925(a) opinion of the Honorable William T. Tully of the Court of Common Pleas of Dauphin County.  Therein, Judge Tully offers a well-reasoned discussion of the two issues Appellant presents herein.  **See** Trial Court Opinion (TCO), 12/4/15, at 5-9.  More specifically, the record fully supports Judge Tully's sufficiency-of-the-evidence analysis, and we ascertain no abuse of discretion in Judge Tully's rejection of Appellant's weight-of-the-evidence claim.  **See Commonwealth v. Houser**, 18 A.3d 1128, 1135 (Pa. 2011) (citations and internal quotation marks omitted) ("A claim alleging the verdict was against

---

*Former Justice specially assigned to the Superior Court.

the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence."). Accordingly, we adopt Judge Tully's opinion as our own, and affirm Appellant's dispositional order for the reasons set forth therein.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2016

IN THE INTEREST OF

J.J.H., A MINOR

:  IN THE COURT OF COMMON PLEAS OF
:  DAUPHIN COUNTY, PENNSYLVANIA
:
:  NO. 1753 MDA 2015
:
:  TRIAL COURT NO. 410 JV 2015

## OPINION
### [Pursuant to Pa. R.A.P. 1925(a)]

Presently before the Superior Court of Pennsylvania is appeal of Jerell Jaquan Hageman, a minor (hereinafter "Juvenile" or "Appellant"), from this Court's Order of September 4, 2015, denying the Juvenile's Post-Dispositional Motion.

## FACTUAL HISTORY

On April 3, 2015, Miles Belic (hereinafter "Mr. Belic"), Father-in-Law of Terrence Lewis (hereinafter "Mr. Lewis"), arrived at 230 North 29th Street (hereinafter "the residence") at or around 3:45 P.M. to babysit his grandsons, Ashton and Chance. [Notes of Testimony ("N.T") Adjudication Hearing 6/18/2015 at 6-6]. Thereafter, all three (3) left for Colonial Park Mall where the children played in the tumbling center from 4:30 P.M. until 5:30 P.M. (N.T. at 7-8). Upon arriving back at the residence, Mr. Belic proceeded to the rear of the home to let the dog out. (N.T. at 8). At this time, he discovered a fruit cup on the floor, the back door jammed, and the gate to the backyard open. (Id.) Mr. Belic stated that the fruit cup was not on the floor when they had left, so he decided to check the windows, which he discovered to be closed. (N.T. at 8-9).

Upon further investigation, Mr. Belic discovered that several pairs of sneakers were missing from the stairs, and that an opened pack of hot dogs was on the second floor. (N.T. at 10-12). He proceeded to clean up and then called his daughter and son-in-law. (N.T. at 13, 19). Mr. Lewis left work and came home immediately to discover

that his back door was busted and approximately twenty-three (23) pairs of sneakers were missing from his residence, as well as a white iPhone and a white iPad. (N.T. at 19-21, 30). The windows were closed and the blinds did not appear to have been tampered with. (N.T. at 22). Thereafter, Mr. Lewis called police to report a burglary, and Officer Dombrowsky responded to the call. (N.T. at 98).

Mr. Lewis and his teenage son, Tyreese Lewis, collect sneakers together. (N.T. at 23). The sneakers are mostly rare Jordans, Kobes and Kevin Durants that you typically cannot get in stores. (N.T. at 24). Mr. Lewis testified that "most of the ones that we have, once we get them you can't get them again unless you go to a special sneaker boutique or a special website that's going to charge you anywhere between 225 to a thousand dollars." (Id.) The price for a pair varies, but they typically spend between $190 and $275 for a pair. (Id.) Most of Mr. Lewis' sneakers are kept in their original boxes, and are stored on the third floor in Tyreese's bedroom. (N.T. at 25). Tyreese also keeps his sneakers in his bedroom, but stores them on a display case. (N.T. at 26).

Mr. Lewis estimated that it would cost approximately $8,000 to $10,000 to replace the twenty-three (23) pairs of sneakers that were stolen.[1] (N.T. at 30). He submitted the claim to his insurance carrier and after verification of the amounts submitted by Mr. Lewis, the insurance carrier valued the amount of loss to be $6,000. (N.T. at 34-35). The insurance company subsequently paid Mr. Lewis $6,000 for the loss of property. (N.T. at 44).

On April 16, 2015, Officer Brant Maley (hereinafter "Officer Maley") of the Penbrook Police Department responded to a call from Tyreese stating that he may have

---

[1] Four (4) pairs were recovered by police during the criminal investigation and returned to Mr. Lewis.

2

information on possible suspects or the location of some of the stolen sneakers. (N.T. at 98-99). Tyreese told Officer Maley that he was doing some research on Facebook and found that Jahlil Scott had a pair of sneakers for sale which Tyreese believed were one of the pairs stolen. (N.T. at 99). He also stated that he saw Teaji ("TJ") Beamer wearing a pair of Michael Jordan Grapes that were his. (Id.)

On April 19, 2015, Officer Maley went to TJ's residence and spoke with his mother about the burglary. (N.T. at 99-100). After TJ and his mother had a discussion, TJ provided the Jordan Grapes[2], Jordan Bobcats, and Jordan Laneys[3] to Officer Maley. (N.T. at 100). TJ told Officer Maley that he received those sneakers from Raymond Gadsen, the Juvenile's co-defendant, during a sneaker trade in the Greenbelt. (N.T. at 101-102).

After leaving TJ's residence, Officer Maley proceeded to Jahlil Scott's residence. (N.T. at 102). Jahlil was not home, but Officer Maley was able to speak with his mother and sister, A'Oshanay Scott. (Id.) A'Oshanay told Officer Maley that her brother had called her previously and asked if she could sell some things for the Juvenile. (N.T. at 58, 102). The Juvenile asked A'Oshanay to sell a white iPhone and a white iPad at Game Stop in the Harrisburg East Mall. (N.T. at 59). A'Oshanay testified that Game Stop would not buy the iPhone because it was too old, and that they would need the Apple ID to buy the iPad. (Id.) Neither A'Oshanay or the Juvenile had the Apple ID, therefore it could not be sold. (Id.)

---

[2] Tyreese identified the Jordan Grapes in Commonwealth Exhibit 4 as being one of the pairs of sneakers that were stolen. (N.T. at 52).
[3] Tyreese identified the Jordan Laneys in Commonwealth Exhibit 3 as being one of pairs of sneakers that were stolen. (N.T. at 51).

3

During the course of the investigation, Officer Maley learned from Jahlil that the Juvenile attempted to trade a pair of sneakers on the Greenbelt, but was unsuccessful as he was robbed at gunpoint. (N.T. at 121). Officer Maley was unable to interview the Juvenile, but was able to talk to his mother about it. (Id.)

During the adjudication hearing, Jahlil testified that he met both the Juvenile and Raymond in the Greenbelt to trade sneakers. (N.T. at 74). When the three (3) met, the Juvenile had a trash bag full of sneakers, as well as a white iPhone and a white iPad. (N.T at 75). He stated that the Juvenile gave him red Kobes, and he gave the Juvenile a pair of Jordans. (Id.) Jahlil also testified that the Juvenile told him that he and Raymond took the sneakers, but did not provide specific details. (N.T. at 78, 89).

## PROCEDURAL HISTORY

On May 18, 2015, a delinquency petition was filed alleging that the Juvenile committed Burglary[4], Theft by Receiving Stolen Property[5], and Conspiracy - Burglary[6]. An Adjudication Hearing was held on June 8, 2015, along with Raymond Gadsen, the Juvenile's co-defendant. At the conclusion of the adjudication hearing, the Court found that Count 1 (Burglary) and Count 3 (Conspiracy – Burglary) were not substantiated, and that Count 2 (Theft by Receiving Stolen Property) was substantiated. Disposition was deferred until August 10, 2015.

On August 10, 2015, a disposition hearing was held before the Honorable Robert J. Eby, Senior Judge, wherein the Juvenile was adjudicated delinquent and found in need of treatment, supervision or rehabilitation. He was placed on probation, and

---

[4] 18 Pa.C.S.A. § 3502(a)(1).
[5] 18 Pa.C.S.A. § 3925(a).
[6] 18 Pa.C.S.A. § 903.

4

ordered to pay court costs, restitution in the amount of $1,000 to Terrence Lewis, and complete twenty-five (25) hours of community service. The Juvenile filed Post-Dispositional Motions on August 20, 2015, which were subsequently denied by this Court on September 4, 2015.

The Juvenile filed a Notice of Appeal of the Order denying the Post-Dispositional Motions on October 2, 2015. On October 20, 2015, this Court directed the Juvenile to file a Concise Statement of Matters Complained of on Appeal ("Statement").

**Statement of Matters Complained of on Appeal**

1. Whether Judge William T. Tully's determination that J.H. committed the delinquent act of Receiving Stolen Property was against the weight of the evidence and, therefore, must be reversed.

2. Whether Judge William T. Tully's adjudication of delinquency against J.H. for the delinquent act of Theft by Receiving Stolen Property was based upon insufficient evidence and, therefore, must be reversed.

3. Whether Judge William T. Tully committed a reversible error where, over defense counsel's hearsay objections, he permitted the Commonwealth to use a document prepared by the victim's insurance carrier to determine the value of the items of personal property for the purpose of determining the amount of restitution owed to victim.

4. Whether Judge William T. Tully committed an error by assigning the grade of Felony 3 to the theft offense for which he found J.H. delinquent where the method for determining the value of the theft was based upon the Commonwealth's use of impermissible heresay [sic] to determine the aggregate value of the stolen items, where proof of the monetary value of the crime is an element used to determine the grading of the offense.

5. Whether the monetary amount that J.H. was ordered to pay in restitution to the victim was proper.

(Statement of Errors, November 2, 2015).


**DISCUSSION**

After disposition in a juvenile delinquency proceeding, the juvenile has the option of filing a post-dispositional motion within ten (10) days of the imposition of disposition.

5

If a juvenile elects to file a post-dispositional motion, all requests for relief must be stated with specificity and particularity.[7] All issues raised before or during the adjudication hearing are deemed to be preserved for appeal regardless of whether the juvenile elects to file a post-dispositional motion on those issues.[8] Here, Appellant filed a timely Post-Dispositional Motion, which was subsequently denied by this Court. This appeal followed.

Appellant alleges that the Commonwealth failed to present sufficient evidence to prove that he committed the delinquent act of Receiving Stolen Property. In a juvenile delinquency proceeding, the Commonwealth has the burden of proving all elements of the crime(s) alleged to have been committed by the juvenile beyond a reasonable doubt. The Commonwealth may sustain that burden by wholly circumstantial evidence.[9]

The test in reviewing the sufficiency of the evidence is "whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish that all of the elements of the offenses beyond a reasonable doubt."[10] Questions of fact are left for the factfinder, which in this case was the judge. The determination of credibility of witnesses and weight to be assigned to the evidence is within the exclusive province of the factfinder.[11]

For the charge of Receiving Stolen Property, the Commonwealth must prove that the juvenile: (1) intentionally received, retained, or disposed of movable property of another; (2) knowing that it had been stolen, or believing that it has probably been

---

[7] Pa.R.J.C.P. 620(A)(1).
[8] Pa.R.J.C.P. 620(A)(2).
[9] In re L.A., 853 A.2d 388, 391 (Pa. Super. 2004).
[10] Id.
[11] Id.

6

stolen; (3) without the intent to restore it to the owner.[12]  For purposes of the statute, "receiving" means acquiring possession, control or title, or lending on the security of the property.[13]  As stated above, the Commonwealth can meet the burden through wholly circumstantial evidence.

Here, Jahlil testified that Appellant told him that he and another individual stole the sneakers, but did not provide specific details.  Jahlil also testified that Appellant traded him a pair of red Kobes, which were later identified by Tyreese as one of the pairs that had been stolen from his home.  The testimony of Jahlil also provided that he had witnessed Appellant with a trash bag of approximately twenty (20) pairs of sneakers, as well as a white iPad and a white iPhone.  The victims in this case, Mr. Lewis and his son, Tyreese, testified that approximately twenty-three (23) pairs of sneakers, along with a white iPhone and iPad were stolen from their home.  Based upon this testimony, it can be inferred that Appellant knew that the sneakers, iPad, and iPhone were stolen, that Appellant had intentionally received those items, and that he did not intend to return them to the owner.

In addition, the testimony of A'Oshanay provided that Appellant specifically asked her to sell a white iPad and a white iPhone to Game Stop for money.  A'Oshanay testified that this was not an unusual request as she has sold items for Appellant before.  In this instance, however, Game Stop required the Apple ID for the iPad before it would buy it from A'Oshanay.  Neither A'Oshanay nor Appellant could provide the Apple ID.  Officer Maley's testimony confirmed A'Oshanay's testimony in that she reported the same to him during the course of investigation. Based upon this testimony, it can be

---

[12] 18 Pa.C.S.A. § 3925(a).
[13] 18 Pa.C.S.A. § 3925(b).

7

inferred that Appellant knew the iPad and iPhone were stolen, that Appellant had intentionally received those items and attempted to dispose of them, and did not have the intent to return them to the owner. Accordingly, the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant committed the delinquent act of Receiving Stolen Property.

In the alternative, Appellant alleges that this Court's determination that he committed the delinquent act of Receiving Stolen Property was against the weight of the evidence. A challenge to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, thus there is no obligation to view the evidence in the light most favorable to the verdict winner.[14] For a judge to grant relief, the verdict must be so contrary to the evidence as to shock one's conscious.[15]

In a juvenile proceeding, the hearing judge sits as the finder-of-fact and where the credibility of witnesses is at issue, the weight to be assigned to such testimony is within exclusive province of the fact-finder.[16] As the trier of fact, the judge is free to believe all, part, or none of the evidence presented during the adjudication hearing.

In the instant case, Jahlil Scott testified that he met Appellant and another individual on the Greenbelt to trade sneakers. During that trade, Appellant gave Jahlil a pair of red Kobes in exchange for a different pair of sneakers. Jahlil testified that Appellant arrived at the meeting place with a trash bag full of sneakers, as well as a white iPad and white iPhone. He further testified that Appellant told him that he and another individual stole the sneakers, but did not provide specific details.

---

[14] In re J.B., 106 A.3d 76, 96 (Pa. 2014); Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000).
[15] In re J.B., 106 A.3d 76, 96 (Pa. 2014); Commonwealth v. West, 937 A.2d 516, 521 (Pa. Super. 2007).
[16] In re R.D., 44 A.3d 657, 664 (Pa. Super. 2012); In re Love, 646 A.2d 1233, 1237 (Pa. Super. 1994).

8

In addition to Jahlil's testimony, his sister, A'Oshanay Scott also testified during the adjudication hearing. A'Oshanay testified that Appellant asked her to sell a white iPhone and a white iPad at the Game Stop for money. A'Oshanay had sold things for Appellant in the past and, therefore, did not think it was an unusual request. When she took the items to Game Stop, she was told that the iPhone was too old, and that they required an Apple ID for the iPad. She did not know the Apple ID, and when she asked Appellant for it he did not know it either. Game Stop would not buy the iPad without the Apple ID.

This Court found the testimony of both Jahlil and A'Oshanay to be credible. In addition, Officer Maley confirmed that he spoke with A'Oshanay during the course of his investigation and she reported the same to him. Based on the testimony adduced at the adjudication hearing, this Court found that the Commonwealth proved beyond a reasonable doubt that Appellant committed the delinquent act of Receiving Stolen Property, and further, that its finding does not shock one's conscience.

Appellant also raises two (2) allegations related to the Commonwealth's use of a document prepared by the victim's insurance carrier as a mechanism to determine the value of the personal property for purposes of restitution, and grading of the theft offense. Those allegations are: (1) the use of the document constituted impermissible hearsay; and (2) the use of the document for purposes of grading the theft offense was improper.

During the adjudication hearing, the victim, Mr. Lewis, testified extensively on the value of the sneakers that were stolen.[17] Mr. Lewis submitted a claim to his insurance carrier with an inventory of the property he believed was stolen, as well as the value of

---

[17] See Notes of Testimony, Adjudication Hearing at 32-44.

9

that property. Originally, his insurance carrier was not going to accept Mr. Lewis' valuation of the sneakers. However, after several discussions, the insurance carrier agreed to do their own independent research to determine the value of each pair. The values submitted by Mr. Lewis, and those identified by the insurance carrier, were virtually identical except that the insurance carrier had a depreciation value on some of the pairs.[18] Mr. Lewis submitted a claim for an estimated loss of $8,000 to $10,000. The insurance carrier paid Mr. Lewis approximately $6,000 for his loss.

The document prepared by the insurance carrier corroborated the testimony of Mr. Lewis with regard to the value of the stolen property. Further, the document in question was prepared by an insurance carrier in the regular course of business of processing claims. It was not prepared in anticipation of litigation. Coupled with the fact that the insurance carrier paid Mr. Lewis $6,000 for his loss, the Court found the amount of loss to be reliable and credible. Therefore, this Court did not err in permitting the Commonwealth to use the document prepared by the insurance carrier.

Based upon the total amount of loss, the Court graded Appellant's Receiving Stolen Property charge as a Felony 3. The grading of theft offenses is statutory in nature, and provides that a theft constitutes a felony of the third degree if the amount involved exceeds $2,000.[19] Here, the amount of loss as determined by the insurance carrier, and testified to by the victim, was $6,000 – well over the $2,000 threshold. Therefore, this Court properly graded Appellant's Receiving Stolen Property charge as a Felony 3.

---

[18] Mr. Lewis argued with his insurance carrier that the sneakers did not depreciate, but actually appreciated because they were kept in pristine condition.
[19] 18 Pa.C.S.A. § 3903(a.1).

10

Lastly, Appellant alleges that the amount of restitution he was ordered to pay is improper. It should be noted that the Honorable Robert J. Eby, visiting Senior Judge, presided over Appellant's disposition hearing held on August 10, 2015. This Court will address this allegation based upon the transcript of the proceeding.

One of the purposes of the Juvenile Act ("Act") is to hold juveniles accountable for their behavior. The Act authorizes a court to "order[ ] payment by the child of reasonable amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child."[20] Relative to restitution in the juvenile delinquency context, the Supreme Court of Pennsylvania has found:

> As is apparent from the face of Section 6352, the rehabilitative policy of the Juvenile Act's restitution provision corresponds to that which supports the imposition of restitution as a condition of probation in a criminal case. . . . Consistent with the protection of the public interest and the community, the rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community. [citation omitted] Thus, the policies underlying the Juvenile Act and its restitution provision, as well as the plain language of Section 6352, serve to invest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile.

In re M.W., 725 A.2d 729, 732-33 (Pa. 1999).

It is well-settled law in Pennsylvania that the court has broad discretion in determining an appropriate disposition, and will not be disturbed absent a manifest abuse of discretion.[21] "In reviewing an order of restitution, discretion is abused where the order is speculative or excessive or lacks support in the record."[22]

---

[20] 42 Pa.C.S.A. § 6352(a)(5).
[21] Commonwealth v. B.D.G., 959 A.2d 362, 366-67 (Pa. Super. 2008).
[22] Id. at 367.

11

In the instant case, restitution was ordered during the disposition hearing held before Senior Judge Eby. A review of the transcript shows that restitution in the amount of $1,000, to be paid joint and several with Appellant's co-defendant, was a recommendation by Juvenile Probation Officer Cale Hoover ("JPO Hoover"), and accepted by the court. Appellant did not object to the amount of restitution, nor request a hearing on restitution at the time of the disposition hearing. The only discussion that occurred was regarding the length of time for which Appellant was to be on probation. Further, Appellant failed to raise the claim that the amount of restitution was improper in his Post-Dispositional Motion.[23] Therefore, this Court finds that Appellant has waived the claim that the amount of restitution is improper.[24]

Accordingly, we ask the Superior Court of Pennsylvania to affirm the Order denying Appellant's Post-Dispositional Motions, and to dismiss the appeal in this matter.

Date: 12-3-15

Respectfully submitted:

William T. Tully, J.

DISTRIBUTION:
Michael D. Rentschler, Esquire, 18 Sunfire Avenue, Camp Hill, PA 17011 *mail*
April Schantz, Esquire – District Attorney's Office *IO*
Clerk of Courts *IO*
Court Administration *IO*
FILE      X

---

[23] In his Post-Dispositional Motions, Appellant did raise the issue of: (1) use of a document to determine the value of property for the purpose of restitution as impermissible hearsay, and (2) grading of the theft offense based on said document. *See* Post Disposition Motions of J.H., a Minor, August 20, 2015.
[24] *See* In re B.T.C., 868 A.2d 1203, 1205 (Pa. Super. 2005).

12