**In the Interest of L.A., a minor, Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 2004.
Filed June 22, 2004.

Rebecca R. Good, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: MUSMANNO, PANELLA and KELLY, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 L.A. appeals from the disposition Order entered following her adjudication of delinquency for terroristic threats.[1] We affirm.

¶ 2 On March 7, 2003, Jennifer Igims ("Igims") transported L.A. to Juvenile Court for a hearing. At the time, Igims was a teacher/counselor with Family Links Youth Emergency Shelter, where L.A. had been placed. During a several hour wait for the hearing, L.A. became angry and concerned that she would not be permitted to return to her grandmother's home. At that time, L.A. described to Igims a plan that L.A. had developed to kill the caseworker assigned to her by Children Youth and Families ("CYF").

¶ 3 On March 10, 2003, a Petition was filed charging L.A. with the delinquent act of terroristic threats. The juvenile court summarized the evidence presented at the hearing on the Petition as follows:

[Igims] described herself as a teacher/counselor with FamilyLinks shelter. [Igim] testified that on March 7, 2003, she transported L.A. to Juvenile Court for a shelter hearing. She explained that she and L.A. had to wait for several hours and that L.A. became more angry as time passed. In particular, L.A. was concerned that she would not be able to return to her grandmother's home. It was during this time, while [Igims] and L.A. were waiting to be called to a courtroom, that L.A. described her plans to kill her CYF caseworker. [Igims] recounted:

She was going to wait for [the caseworker] to come after work, go to her office. I forget where the office is now. I don't remember where, but she actually said the whole address when she said her office. She said she would wait for her after work and kill her when she would come to her car, because she was upset. And I was talking to her and said, these are serious threats. You can't make these kinds of threats against somebody. And she said, I don't care. I'm going to kill her. I don't care if I get in trouble. She said she would even hire somebody, get somebody to kill her, a man dressed in a black outfit to wait for her behind her silver [N]eon, I believe is the car she said ... she kept saying she didn't care and she would kill her.

[Igims] explained that she subsequently advised the caseworker of the threat.

CYF caseworker Karen Rohaly ("Rohaly") testified to being L.A.'s caseworker and learning from [Igims] that L.A. had threatened to kill her. [Rohaly] stated that she was shocked and threatened "to hear somebody you know tell someone to look for your obituary."

1. 18 Pa.C.S.A. § 2706.

She said that she took L.A.'s threats seriously.

[Rohaly] concurred with [Igims] that L.A. was irritated that day because she suspected that she might not be returned to the care of her grandmother.

L.A. testified on her own behalf. She stated that she told [Igims] she would run if the Court returned her to the shelter. L.A. flatly denied making any remarks about her caseworker, and stated "I was never bothered or anything else by anybody else about anything." She also said that she did not speak to [Igims] for very long, and that her grandmother was with her whenever she spoke to [Igims].

Juvenile Court Opinion, 10/14/03, at 2–4 (citations omitted).

¶ 4 The juvenile court subsequently adjudicated L.A. delinquent. On August 14, 2003, the juvenile court entered its dispositional Order, which stated: "Child committed to the [A]cademy with a suspended commitment to VQ Boot & Hat Camp. Child released from Shuman [Detention Center]." Disposition Order, 8/14/03. Thereafter, L.A. filed the instant timely appeal.

¶ 5 L.A. presents the following claims for our review:

I. Is L.A.'s adjudication of delinquency for terroristic threats supported by sufficient evidence?

II. Did the lower court violate 42 Pa. C.S.A. § 6341(b) when it failed to enter on the record the particular subsection that L.A. [had] violated?

III. Was the lower court's disposition focused more on punishment than rehabilitation when it chose to disregard L.A.'s age and lack of a delinquency history and then give inappropriate weight to L.A.'s adherence to the terms of the three continuance orders and her dependency?

Brief for Appellant at 5. We will address these claims in order.

¶ 6 L.A. first challenges the sufficiency of the evidence underlying her adjudication of delinquency for terroristic threats. L.A. asserts that she never directly threatened to commit a crime of violence. According to L.A., even if she did make an indirect threat, it was a "spur-of-the-moment threat resulting from transitory anger" prompted by the caseworker's statement that L.A. would remain in shelter care. L.A. further asserts that the Commonwealth failed to establish that she had the requisite intent to terrorize her caseworker. We disagree.

¶ 7 In a juvenile proceeding, the hearing judge sits as the finder of fact. *In the Interest of A.D.*, 771 A.2d 45, 53 (Pa.Super.2001). The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder. *Id.* In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt. *In the Interest of J.C.*, 751 A.2d 1178, 1180 (Pa.Super.2000). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *In the Interest of J.D.*, 798 A.2d 210, 212 (Pa.Super.2002).

¶ 8 The Crimes Code states that terroristic threats exist when a person "communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). Thus, to obtain a

conviction for making a terroristic threat, the Commonwealth must prove that (1) the defendant made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror. *Commonwealth v. Kelley,* 444 Pa.Super. 377, 664 A.2d 123, 127 (1995). A direct communication between the defendant and the victim is not required to establish the crime of terroristic threats. *Id.*

¶ 9 In its Opinion, the juvenile court stated the following:

> In the present case, the Court accepted as credible the testimony of [Igims] that L.A. recited a detailed plan to kill her caseworker. The fact that L.A. did not threaten [Rohaly] directly does not negate the psychological distress caused by her communications to [Igims].
>
> \* \* \*
>
> The Court also found that when L.A. communicated her plan to kill the caseworker, it was clearly a threat to commit a crime of violence with the intent to terrorize.... The "intent" referenced in the statute is expressly the intent to terrorize, not, as stated by defense counsel, "the intent to communicate."

Juvenile Court Opinion, 10/14/03, at 5. We agree with the sound reasoning of the juvenile court, and affirm on this basis, with the following addendum.

¶ 10 In her brief, L.A. claims that the facts in this case are similar to those in *Commonwealth v. Anneski,* 362 Pa.Super. 580, 525 A.2d 373 (1987), wherein this Court held that the defendant had not committed the offense of terroristic threats. The facts in *Anneski,* however, are distinguishable from those in the instant case. The evidence in that case established that during an argument with a neighbor, the defendant told the neighbor that if the neighbor "tried to run over her

kids anymore at the bus stop[,]" the defendant would bring a gun and use it. *Id.* at 374. This Court noted that the comment was made "during a heated, perhaps hysterical, argument between neighbors," and that the defendant lacked a settled purpose to terrorize the neighbor. *Id.* at 376.

¶ 11 In this case, L.A.'s claim that her threat was "spur-of-the-moment" is not supported by the evidence. The threat made in this case, that L.A. would hire a man dressed in a black outfit to wait for her caseworker behind the caseworker's silver Neon, supports a finding that L.A. had planned a method of attack and indicated a settled intent to terrorize her caseworker. N.T., 8/14/03, at 6. When advised that she should not be making this kind of threat, L.A. responded that she did not care and that she would kill the caseworker. *Id.* at 6–7. Accordingly, L.A. is not entitled to relief on her claim.

¶ 12 L.A. next claims that the juvenile court violated 42 Pa.C.S.A. § 6341(b) when it failed to enter on the record the particular subsection of 18 Pa.C.S.A. § 2706 that L.A. had violated. L.A. claims that this violation requires that this Court reverse the dispositional Order, and remand for a rehearing on the delinquency Petition. We disagree.

¶ 13 Section 6341(b) provides, in relevant part, as follows:

> If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which [she] is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed....

42 Pa.C.S.A. § 6341(b). L.A. is correct in asserting that at the hearing, the juvenile court failed to specify the grading of the offense on the record. However, our re-

view of the record discloses that L.A. only was charged with committing the crime of terroristic threats, as defined by section 2706(a)(1) of the Crimes Code. We cannot conclude that the juvenile court's oversight requires reversal of the dispositional Order and remand for a new hearing.

¶ 14 Under 18 Pa.C.S.A. § 2706(a), a person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to "commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). The other provisions of section 2706 apply to threats to "cause evacuation of a building, place of assembly or facility of public transportation," *see* 18 Pa.C.S.A. § 2706(a)(2), or threats to "otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience," *see* 18 Pa.C.S.A. § 2706(a)(3). These provisions could not possibly apply to L.A.'s actions. Moreover, it is clear from the proceedings that all parties were aware of the particular subsection of 18 Pa.C.S.A. § 2706 applicable to L.A.'s actions. Accordingly, we cannot conclude that the juvenile court's failure to specify the applicable subsection of 2706 requires reversal of the dispositional Order and a remand for a new hearing.[2]

¶ 15 Finally, L.A. claims that the juvenile court improperly focused on punishment, rather than rehabilitation, in fashioning its dispositional Order. L.A. further claims that the juvenile court's placement of L.A. at the Academy for an indeterminate period of time was unreasonable. We disagree.

¶ 16 Initially, we note that the Commonwealth objects to L.A.'s failure to include in her appellate brief a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of her sentence. The Commonwealth asserts that L.A.'s failure to include the statement in her brief precludes our review of her sentencing claim. We disagree.

¶ 17 Pennsylvania Rule of Appellate Procedure 2119 provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in [her] brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa. R.A.P. 2119(f). However, this Court has expressly recognized that juvenile proceedings are not criminal proceedings. *In re R.A.*, 761 A.2d 1220, 1223 (Pa.Super.2000).

> Under the Juvenile Act, juveniles are not charged with crimes; they are charged with committing delinquent acts. They do not have a trial; they have an adjudicatory hearing. If the charges are substantiated, they are not convicted; they are adjudicated delinquent. Indeed, the Juvenile Act expressly provides [that] an adjudication under its provisions is not a conviction of a crime. 42 Pa.C.S.A. § 6354(a). These are not insignificant differences or the transposing of synonyms. The entire juvenile system is different, with different purposes and different rules.

*In re S.A.S.*, 839 A.2d 1106, 1108–09 (Pa.Super.2003).

¶ 18 We further note that in discussing the contents of a Rule 2119(f) statement,

---

2. We further note that defense counsel did not object to the juvenile court's failure to specify the applicable subsection. The Pennsylvania Rules of Appellate Procedure state that an issue cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Thus, this issue could be deemed waived.

this Court has stated that the statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Sentencing Code is violated. *Commonwealth v. Goggins,* 748 A.2d 721, 727 (Pa.Super.2000). Similarly, the Rule 2119(f) statement must specify what fundamental norms the sentence violates and the manner in which it violates those norms. *Id.* Obviously, these requirements are inapplicable in juvenile proceedings. We cannot conclude, based upon the language of Rule 2119(f) and the obvious differences between juvenile and criminal proceedings, that the requirements of Rule 2119(f) apply to appeals from juvenile disposition orders. Accordingly, L.A.'s failure to include a Rule 2119(f) Statement in her appellate brief does not preclude our review of the discretionary aspects of her disposition Order.

 ¶ 19 L.A. presents two challenges to her disposition Order. L.A. first claims that the juvenile court improperly focused on punishment, rather than rehabilitation, in its disposition Order. In her second claim, L.A. asserts that L.A.'s placement in the Academy for an indeterminate period of time was unreasonable in light of her age, lack of a juvenile record, and her rehabilitative needs.

 ¶ 20 The Juvenile Act grants broad discretion to the court in disposition. *In the Interest of A.D.,* 771 A.2d at 53 (citing 42 Pa.C.S.A. §§ 6341, 6352; *In re Love,* 435 Pa.Super. 555, 646 A.2d 1233 (1994)). This Court will not disturb a disposition absent a manifest abuse of discre-

tion. *Love,* 646 A.2d at 1238. The purpose of the Juvenile Act is as follows:

Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." *In the Interest of J.C.,* 751 A.2d at 1181.

¶ 21 L.A. first claims that the juvenile court improperly focused on punishment, rather than rehabilitation, in determining an appropriate disposition. In support of this assertion, L.A. contends that the juvenile court improperly considered and afforded too much weight to L.A.'s compliance with the terms imposed by the juvenile court during continuances of her disposition hearing. L.A. further asserts that the court inappropriately relied on her tumultuous case history in dependency proceedings.

¶ 22 Our review of the record discloses that the juvenile court continued L.A.'s disposition hearing several times. During these continuances, the juvenile court required L.A. to submit to drug screening, enroll in "Gwen's Girls" school, and to adhere to a court-imposed curfew.[3] Order, 3/17/03. Contrary to L.A.'s assertions, the juvenile court did not place an inordinate

---

**3.** Pursuant to 42 Pa.C.S.A. § 6341(e), the disposition hearing may be continued for a reasonable period of time "to receive reports and other evidence bearing on the disposition or the need for treatment, supervision or rehabilitation." 42 Pa.C.S.A. § 6341(e). This sec-

tion further provides that "[i]n this event, the court shall make an appropriate order for detention of the child or [her] release from detention subject to supervision of the court during the period of the continuance." *Id.*

amount of weight on L.A.'s compliance with these conditions.

■ ¶ 23 It is apparent from the record that the juvenile court balanced many factors in fashioning a disposition appropriate for L.A. At the hearing on August 14, 2003, L.A.'s grandmother, Ms. Young ("Young"), testified that L.A. did not follow Young's rules. For example, Young testified that L.A. did not follow her curfew. In addition, Young described the following incident:

> I came home one day and there were a houseful of people, teenagers in my house. And [L.A.] knows nobody is supposed to be there.
>
> These were her friends. Plus there was a car involved. That really frightens me. [L.A.] and her friends were driving around in a car that I ran a check out [sic] and found out it had inappropriate license plates on it.
>
> And [L.A.] said she didn't know anything about it, but the car was reported stolen, because I ran a check on it. And it was not [L.A.] that stole the car or anything, but she was riding around in it.
>
> And that's really frightening.

N.T., 8/14/03, at 33. Although Young believed that she could supervise L.A., Young admitted that L.A. did not comply with Young's rule to be at home by 8:00 p.m., when Young arrived home from work. Id. at 34.

¶ 24 Prior to announcing its disposition, the juvenile court summarized its involvement with L.A. in dependency proceedings, as well as the present delinquency proceeding. Id. at 36–40. L.A.'s dependency history included a police petition that L.A. "had been defiant against mother and school personnel, that she had been running away, smoking marijuana, drinking alcohol, disruptive when she was in school … but chronically truant." Id. at 33. After L.A. had been placed with Young, she "ran from court" instead of appearing at a February 19, 2003 hearing, and several months later, had again violated her curfew. Id. at 36–40.

¶ 25 We cannot conclude that the juvenile court abused its discretion in reviewing this history, or that it placed inordinate emphasis on punishment, rather than rehabilitation. In announcing its disposition, the juvenile court explained:

> [L.A.] needs to know that if I release her to go to The Academy and she messes up, I'm not going to—she is not going to get a bunch of sanctions. She will go to boot camp.
>
> And if she runs and I have to issue another attachment, she won't be going to the Boot Camp when she's picked up, she will be going to long term placement.
>
> One reason this delinquency petition has been continued so many times is we were really hoping [L.A.] would straighten up. Really we were.
>
> But [L.A.] has worked against the Court, against her mother, against everyone. And I'm simply not going to have it.
>
> Now, you can send the referral to the Boot Camp. I will commit her to The Academy immediately, and I'm scheduling a 30–day review.
>
> And if she has any violations, then she's going to be placed. And I don't care if she's doing well in school. You can do well in Boot Camp School.
>
> And if you run, then you can look at long-term placement because that's where you'll be going.

N.T., 8/14/03, at 44–45.

¶ 26 Based on the foregoing, we discern no abuse of discretion by the juvenile court. The juvenile court's disposition ap-

propriately took into account the needs of L.A., L.A.'s accountability for her actions, and the protection of the public. We perceive no manifest abuse of discretion which would cause us to disturb its Order.

¶ 27 Order affirmed.