J-S19014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Z.M. | No. 1645 EDA 2015 |

Appeal from the Dispositional Order March 23, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0003138-2014

BEFORE: BENDER, P.J.E., STABILE, J. AND MUSMANNO. J.

MEMORANDUM BY BENDER, P.J.E.:                          **FILED MAY 06, 2016**

Z.M. appeals from the dispositional order entered following the adjudication of his delinquency on March 23, 2015, for acts constituting aggravated assault, simple assault, and conspiracy.[1]  We affirm.

The Commonwealth adduced the following evidence:

At the [hearing] on March 23, 2015, Jose Luciano testified that on October 9, 2014, he went to the Septa [elevated train] station and there were children jumping the admissions gate and getting onto the crowded Septa train.  The police were chasing them but did not intercept them.  He noted that he boarded the train with his friend and, when the train stopped at the Church Street station, his friend was pushed off the Septa train and punched.  He testified that he got off the train to help his friend when he came face to face with [Appellant], Z.M.  Mr. Luciano then identified [Appellant] at the bar of the court.  Mr. Luciano indicated that he pushed [Appellant] and [Appellant] then pushed him back and started punching him.  The witness attempted to defend himself when a group of other individuals started hitting and punching [and] backing him into a corner on the Church Street station platform.  Mr. Luciano explained that [he] put his arms up to protect his face but the group still

_____

[1] Respectively, **see** 18 Pa.C.S. §§ 2702(a), 2701(a), and 903(c).

continued to hit him in the face and arms more than ten (10) times. Mr. Luciano also identified the Co-Defendant at the bar of the court as being involved in the incident. The witness indicated that the incident lasted approximately ten (10) minutes when a Septa employee intervened to stop the flight. Mr. Luciano suffered a broken arm and a black eye. He underwent surgery at St. Christopher's Hospital[,] and the fracture was secured with surgical plates and screws. Mr. Luciano testified that he missed approximately one month of school due to his injuries and he took pain medicine for longer than that. He still has scars on the underside of his left arm. Mr. Luciano explained that he had seen [Appellant] and Co-Defendant in the hallways of Frankford High School, where they were all students. [Appellant] was identified in a photo array.

Next, counsel stipulated to the authenticity of a cell phone video obtained by School Police Officer Linda Sands. The video depicted part of the incident. The video was marked as C-1.

The second witness was Detective Jason Connor, Septa Transit Police Officer, Badge #16. Detective Connor investigated the October 9, 2014[] incident that occurred on the Church Street [elevated train] platform[,] which led him to interview [Appellant], Z.M. Counsel stipulated that the interview took place on November 20, 2014. Detective Connor identified [Appellant], Z.M., at the bar of the court by name and clothing. Detective Connor said he spoke to the complainant on the day of the incident and he indicated that he attended Frankford High School. Detective Connor then spoke to the School Police Officer, [Officer] Sands, who informed him that witnesses implicated [Appellant], Z.M., in the assault. Detective Connor then spoke with [Appellant's] mother and requested her to bring her son to Septa Police Headquarters at 1234 Market Street, Philadelphia, PA for a formal interview. [Appellant] agreed and, prior to questioning, he was mirandized. He was interviewed in the presence of his mother. During the interview, [Appellant] acknowledged involvement in [the] October 9, 2014 incident. He also admitted that he "punched" the complainant and then other individuals jumped in to "help him[."] He also saw other individuals "punching" the complainant. [Appellant's] statement was entered into evidence as C-2[,] and the Commonwealth rested.

> Following Detective Connor's testimony, counsel stipulated that Barbara Martin would testify that [Appellant], Z.M., has the reputation and character in the community as being a peaceful and law-abiding person.

Juvenile Court Opinion, 07/07/2015, at 3-5 (citations to notes of testimony omitted). To these facts, we note further that Mr. Luciano testified expressly that Appellant and his associates first attacked his friend, and thereafter attacked him when he tried to intervene. *See* Notes of Testimony (N.T.), 03/23/2015, at 10.

Following a hearing in March 2015, the juvenile court adjudicated Appellant delinquent and placed him on probation. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The juvenile court issued a responsive opinion.

> Appellant raises the following issue:

> Was not the evidence insufficient to sustain [dispositions of delinquency] against [A]ppellant for aggravated assault and conspiracy, where the evidence did not establish that [A]ppellant caused or attempted to cause serious bodily injury to the complainant, and did not prove that there was any criminal agreement between [Appellant] and another assailant?

Appellant's Brief at 3.

Appellant contends that there was no evidence that he was individually responsible for Mr. Luciano's serious injuries. *See* Appellant's Brief at 10. Thus, according to Appellant, his liability for aggravated assault may only be

- 3 -

sustained if there is sufficient evidence of his participation in a conspiracy.[2]

*Id.* Appellant submits that the evidence of a conspiracy is merely speculative, in particular suggesting that the incident was spontaneous and without a common plan or understanding. *See* Appellant's Brief at 13-16 (citing in support *Commonwealth v. Kennedy*, 453 A.2d 927, 930 (Pa. 1982); *Commonwealth v. Wilson*, 296 A.2d 719, 721-22 (Pa. 1972)). Thus, Appellant concludes, the evidence of conspiracy was insufficient to support his adjudication. *See* Appellant's Brief at 17.

> In a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder. In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004) (internal citations omitted). Moreover, the fact finder "is free to believe all, part, or none of the evidence." *Commonwealth v. Newton*, 994 A.2d 1127, 1132 (Pa. Super. 2010).

---

[2] Appellant concedes he is liable for simple assault. *See* Appellant's Brief at 17 n.2. Moreover, though Appellant does not expressly concede that Mr. Luciano suffered serious bodily injury, such as would result from an aggravated assault, we infer this from his argument.

A juvenile may be adjudicated delinquent for conspiracy if the Commonwealth proves the following:

1) [T]he [juvenile] entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. This overt act need not be committed by the [juvenile]; it need only be committed by a co-conspirator.

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, [an adjudication of delinquency] for conspiracy requires proof of the existence of a shared criminal intent.

*In re V.C.*, 66 A.3d 341, 349 (Pa. Super. 2013), *appeal denied*, 80 A.3d 778 (Pa. 2013) (internal punctuation modified; citations omitted); *see also* 18 Pa.C.S. § 903(a).

In the context of an assault, it is well settled that "[p]ersons do not commit the offense of conspiracy when they join into an affray spontaneously, rather than pursuant a common plan, agreement, or understanding." **Kennedy**, 453 A.2d at 930 (citing **Wilson**, 296 A.2d at 721-22). However,

[a]n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in

- 5 -

committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*In re V.C.*, 66 A.3d at 349; *see also Kennedy*, 453 A.2d at 930.

In **Kennedy**, a physical altercation ensued following an intense argument between the defendant, his friend, and defendant's landlord. **Kennedy**, 453 A.2d at 928. The defendant and his friend "viciously beat" the landlord, who eventually died of his wounds. *Id.* The defendant was convicted of conspiracy (among other crimes), but our Supreme Court arrested the judgment of sentence with respect to conspiracy. The Court acknowledged that the Commonwealth's evidence established that a brawl occurred and that the defendant and his friend were participants. *Id.* at 930. However, the Court concluded that their "mere association" and "simultaneous participation in the assault" was insufficient to establish an agreement or common design. *Id.*; *see also Wilson*, 296 A.2d at 721-22 (concluding that there was insufficient evidence of conspiracy where the defendant spontaneously fought with the victim and where the defendant's friends thereafter joined the fight without encouragement or invitation).

In our view, **Kennedy** and **Wilson** are inapposite, and thus, Appellant's argument is unpersuasive. Mindful of our standard of review, *see In re L.A.*, 853 A.2d at 391, the evidence established that Appellant and his confederates jumped the turnstiles and boarded the train, successfully escaping from police pursuit. At a subsequent station, members

of the group pushed Mr. Luciano's friend off the train and assaulted him. When Mr. Luciano intervened on his friend's behalf, members of the group, including Appellant, assaulted him. This group assault caused Mr. Luciano to suffer serious bodily injury. Based upon these overt acts, the evidence suggests more than a mere association between Appellant and his confederates - more than the simultaneous participation of multiple assailants in an assault. To the contrary, the evidence suggests that Appellant and his confederates acted with common, criminal purpose.

Accordingly, the juvenile court properly inferred that Appellant conspired to commit the crime of aggravated assault. *See In re V.C.*, 66 A.3d at 349. We affirm the dispositional order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016