J. S47043/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| N.J.W., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  COMMONWEALTH OF | : | No. 3752 EDA 2016 |
| PENNSYLVANIA | : | |

Appeal from the Order Entered November 21, 2016,
in the Court of Common Pleas of Monroe County
Criminal Division at No. CP-45-JV-0000192-2016

BEFORE:  LAZARUS, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED AUGUST 18, 2017**

The Commonwealth appeals from the November 21, 2016 order entered in the Court of Common Pleas of Monroe County that reversed the trial court's delinquency adjudication and dismissed all charges against N.J.W., a minor.  After careful review, we affirm.

The trial court set forth the following:

> On September 22, 2016, the Commonwealth filed a delinquency petition against N.J.W. ("Juvenile"), alleging that on September 20, 2016, he exposed himself, masturbated and ejaculated during afterschool detention at Pleasant Valley High School.  The petition charged Juvenile with two counts of Indecent Exposure,[Footnote 1] two counts of Open Lewdness,[Footnote 2], and three counts of Disorderly Conduct.[Footnote 3]
>
> > [Footnote 1] 18 Pa.C.S.A. § 3127(a)[.]
> > [Footnote 2] 18 Pa.C.S.A. § 5901[.]
> > [Footnote 3] 18 Pa.C.S.A. § 5503(a)(3).

We held an adjudication hearing on October 7, 2016. The Commonwealth presented two female witnesses, I.F. and A.D. Both witnesses testified that there were four female students including themselves, Juvenile, and teacher Daisy Genovese in the classroom at the time of the alleged incident. The classroom was arranged in several clusters of 2-5 desks pushed together. Each student sat at a separate cluster. Genovese's desk was located in the back corner of the classroom, and a chalkboard was located in the front of the classroom.[Footnote 4]

[Footnote 4] Photographs of the classroom were marked for identification purposes, but never received into evidence.

I.F. testified that she sat at a cluster furthest away from Genovese's desk by the chalkboard. From her vantage point, I.F. could see everyone in the room. A.D. also sat in the front of the classroom in the cluster directly across from I.F. Juvenile sat in the back of the classroom 10-12 feet across from Genovese's desk and facing I.F. and A.D. The other two female students sat with their backs toward Juvenile.

With approximately twenty minutes remaining in detention, I.F. and A.D. noticed Juvenile staring at them while masturbating with his penis exposed. Juvenile periodically stopped masturbating and covered his penis whenever Genovese left her desk to walk around the room. Both students testified that Juvenile finally stopped when he ejaculated with five minutes remaining in detention; however, their versions differed. I.F. saw [sic] Juvenile ejaculated on himself. Conversely, A.D. stated that Juvenile ejaculated on parts of the desk and himself.

Both students never alerted Genovese that Juvenile was masturbating even when they were given the opportunity to tell Genovese discreetly. Specifically, after Juvenile and the other two female

students left the classroom, I.F. and A.D. returned to retrieve I.F.'s cellphone when only Genovese was in the room. I.F. testified that she did not mention Juvenile's actions to Genovese because she was still in shock by what she saw. A.D. stated that she did not tell Genovese because she was scared and disgusted. Five minutes after leaving Genovese's classroom, I.F. testified that she "saw the Dean of Students and decided to tell him what had happened." I.F. and A.D.'s testimony never identified the Dean of Students by name or what they told this person.

In his defense, Juvenile called Genovese to testify. The teacher testified that she had 28 years of teaching experience and was familiar with Juvenile and the female witnesses. Genovese stated that she had a clear view of Juvenile throughout detention; however, she was not watching Juvenile the entire time. In addition, there was no semen found in the classroom. Moreover, Genovese indicated that she was interacting with A.D. throughout detention and her demeanor was normal.

In a close call, we found the female students' testimony credible and adjudicated Juvenile delinquent for one count each of indecent exposure, open lewdness, and disorderly conduct. We dismissed the remaining charges as duplicative.[Footnote 5]

> [Footnote 5] Prior to announcing our decision, the Commonwealth withdrew one count of disorderly conduct.

The Monroe County Juvenile Probation Department completed a social summary on Juvenile. The summary states:

> It is believed that a more thorough investigation may have been needed in this case as several questions have arisen while speaking to school staff that were involved in this incident, which in

turn has led this officer to question the credibility of the individuals involved in this case . . . [I.F. and A.D.] did approach an Assistant Principal following detention that day, and their report to him at that time was that [Juvenile] was rubbing himself outside of his pants, not the report that they later provided to the Trooper.

Unfortunately, this Court was not made aware of some of the above mentioned facts, and therefore, this case was decided on the creditability [sp] of the witnesses and their testimonies given that day.

Social Summary Report P. 10.

Following Juvenile's disposition hearing on November 14, 2016, he was placed on probation for a minimum period of one year.

Juvenile filed a timely post-dispositional motion to reconsider and dismiss the charges claiming our adjudication decision was against the weight of the evidence. The motion premised the contradictory testimony of I.F. and A.D. regarding how Juvenile allegedly ejaculated.

We held a reconsideration hearing on November 21, 2016. Juvenile underscored the discrepancies between I.F. and A.D.'s adjudication hearing testimony and Juvenile's social summary that detailed the story I.F. and A.D. told Assistant Principal David Pacchioni immediately following the incident. Juvenile stated that he was never aware of Pacchioni's involvement in the case prior to the social summary. Juvenile's attorney asserted that he went to the school to investigate the incident prior to the adjudication hearing, and the school's principal never mentioned Pacchioni's association in the matter. The principal only disclosed Genovese's involvement. Juvenile's attorney indicated that Pacchioni was

available by phone to testify that what the female students told him was contradictory to their adjudication hearing testimony.[Footnote 6]

> [Footnote 6]  Juvenile's attorney stated that Pacchioni recently changed school districts and was unable to attend the reconsideration hearing, but available by phone.

We asked the juvenile probation officer if his investigation in completing the social summary showed anything different from what was said at the adjudication hearing.  The juvenile probation officer informed the court that I.F. and A.D. told a very different story to Pacchioni right after the incident.  Specifically, I.F. and A.D. told Pacchioni that Juvenile was rubbing himself outside of his pants.  They never mentioned to Pacchioni that Juvenile exposed his penis, masturbated, or ejaculated.  The probation officer stated that the girls' story changed to include exposure and ejaculation only after speaking with police later that evening.

The Commonwealth asked for a re-hearing in the case.  The assistant district attorney representing the Commonwealth at the reconsideration hearing never read Juvenile's social summary and was unaware of Pacchioni's involvement in the case.[Footnote 7]

> [Footnote 7]  The Assistant District Attorney at the Reconsideration Hearing also represented the Commonwealth at Juvenile's adjudication hearing.

We noted our reservations after the adjudication hearing that Juvenile was delinquent beyond a reasonable doubt.  We acknowledged the rarity of the situation, reversed our finding of delinquency, and dismissed all charges based on the revelations in Juvenile's social summary.  There was no objection raised by the Commonwealth throughout the reconsideration hearing.

Trial court opinion, 1/11/17 at 1-6 (citations to notes of testimony omitted; ellipses and brackets contained in original social summary report).

The record reflects that following entry of the order that reversed the finding of delinquency and dismissed all charges against N.J.W., the Commonwealth filed a timely notice of appeal. The trial court then ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely complied. Thereafter, the trial court filed its Pa.R.A.P. 1925(a) opinion.

The Commonwealth raises the following issue for our review: "Whether the trial court erred in *sua sponte* reversing its finding of delinquency in this matter and dismissing all of the charges?" (Commonwealth's brief at 3.)

Preliminarily, we note that the trial court and N.J.W. contend that the Commonwealth waived this issue on appeal for failure to raise it below. Our review of the record reflects that following N.J.W.'s adjudication of delinquency and disposition, N.J.W. filed a timely optional post-dispositional motion pursuant to Pa.R.J.C.P. 620(1) requesting reconsideration of the delinquency adjudication and dismissal of all charges as against the weight of the evidence. (N.J.W.'s motion for reconsideration, 11/15/16.) The trial court held a hearing on N.J.W.'s motion.

At that hearing, N.J.W. challenged the weight of the evidence based on teacher Daisy Genovese's testimony. (Notes of testimony, 11/21/16 at 3-4.)

N.J.W. also advanced an argument based on the social summary report that the Monroe County Juvenile Probation Department completed after N.J.W.'s adjudication that revealed inconsistencies in I.F.'s and A.D.'s versions of the incident. (*Id.* at 4-6.) Specifically, I.F. and A.D. provided one account of the incident to the former assistant principal of the school and another account to police. (*Id.* at 6-7.) In response, Andrew Kroeckel, the attorney representing the Commonwealth at the hearing, stated that he "had no notice of this" and did not "even know who [the former assistant principal] is."[1] (*Id.* at 4-5.) Attorney Kroeckel also stated that the information was "not in the motion," and "it's not appropriate for it to be raised now." (*Id.* at 5.) At this point, the juvenile probation officer, who was identified in the transcript as "Mr. Sheller," appeared at the hearing and confirmed the inconsistent reports provided by I.F. and A.D. (*Id.*)

Following Juvenile Probation Officer Sheller's statements, Attorney Kroeckel requested a recess of approximately one week to speak with the former assistant vice principal, as well as I.F. and A.D., to "try to figure out what's going on, if anything." (*Id.* at 7.) The trial court then stated:

> When the hearing was held back on October 7th of this year, I found [N.J.W.] delinquent of the charges. But I remember it was not a slam dunk, in my opinion. The rule, of course, is delinquent beyond a

---

[1] Attorney Kroeckel acknowledged that the Commonwealth attorney who attended N.J.W.'s disposition read the social summary report. (Notes of testimony, 11/21/16 at 5.)

> reasonable doubt, but I began to have doubts after the decision.
>
> And in reading the pre-sentence -- the social summary and what has developed, I can't say in all honesty that [N.J.W.] should have been found delinquent beyond a reasonable doubt for these charges.
>
> It's a rare thing when you make a finding and then reconsider reversing your finding a month or two later. But in this case, I think it's the right thing to do. So I am going to make an order[.]

*Id.* at 7-8.

The trial court then entered an on-the-record order, which was later reduced to writing and entered on the docket, that reversed the delinquency finding and dismissed the charges against N.J.W. (*Id.* at 8.) After entering that on-the-record order, the following took place:

> THE COURT: If the Commonwealth wishes to appeal that decision, then --
>
> [N.J.W.'S COUNSEL]: Thank you, Your Honor.

*Id.*

The proceedings then concluded. Presently, the trial court and N.J.W. contend that the Commonwealth waived the issue of whether the trial court erred in *sua sponte* reversing the delinquency finding and dismissing the charges against N.J.W. on appeal because it failed to raise the claim with the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). After a close reading of the hearing transcript, however, we afford the Commonwealth the

benefit of the doubt because it did object to the trial court's consideration of the social summary report as outside the scope of the motion for reconsideration as that motion only challenged the weight of the evidence. It follows then that because the trial court based its reversal and dismissal on its consideration of the social summary report, and the Commonwealth objected to such consideration, that the Commonwealth preserved the issue it raises on appeal. We will, therefore, address the Commonwealth's claim.

In its brief, the Commonwealth first argues that the trial court lacked authority to **sua sponte** reverse its finding of delinquency by relying on cases that hold that the reconsideration procedure set forth in 42 Pa.C.S.A. § 5505, which provides for modification or rescission of any order with certain exceptions, does not authorize a trial court to change a previously recorded guilty verdict to a not guilty verdict. (Commonwealth's brief at 10.) The Commonwealth then argues that although Pa.R.Crim.P. 704(B)(1), which outlines certain procedures to be followed at the time of sentencing, permits a trial court to entertain an oral motion for arrest of judgment under extraordinary circumstances when justice requires, that rule provides no such authority absent an oral motion. Therefore, according to the Commonwealth, because N.J.W. failed to make an oral motion for arrest of judgment at N.J.W.'s motion for reconsideration hearing, the trial court "did

not conduct the appropriate review."[2] (***Id.*** at 11.) The Commonwealth then reiterates its position that once the verdict was entered, the trial court had no authority over the case. (***Id.***) In so doing, the Commonwealth relies on criminal cases wherein post-verdict courts were found to have abused their discretion by reweighing the evidence and then changing verdicts. (***Id.*** at 11-14.)

The Commonwealth's argument is misguided. It is well-settled that an adjudication of delinquency is not a conviction. ***See*** 42 Pa.C.S.A. 6354(a) ("[a]n order or disposition or other adjudication in a proceeding under [the Juvenile Act] is not a conviction of crime"); ***see also Commonwealth v. Hale***, 128 A.3d 781, 584 (Pa. 2015.) Indeed,

> this Court has expressly recognized that juvenile proceedings are not criminal proceedings. Under the Juvenile Act, juveniles are not charged with crimes; they are charged with committing delinquent acts. They do not have a trial; they have an adjudicatory hearing. If the charges are substantiated, they are not convicted; they are adjudicated delinquent. Indeed, the Juvenile Act expressly provides [that] an adjudication under its provisions is not a conviction of a crime. 42 Pa.C.S.A. § 6354(a). These are not insignificant differences or the transposing of synonyms. The entire juvenile system is different, with different purposes and different rules.

---

[2] Contrary to the Commonwealth's interpretation of Pa.R.Crim.P. 704(B)(1), the rule provides that "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B)(1).

*In re L.A.*, 853 A.2d 388, 393 (Pa.Super. 2004) (internal citations omitted;

brackets in original).

The purpose of the Juvenile Act is:

> [c]onsistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
>
> 42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." *In the Interest of J.C.*, 751 A.2d at 1181.

*Id.*

Therefore, the Commonwealth's argument necessarily fails because it

rests on the flawed premise that N.J.W. was convicted of crimes in a criminal

proceeding when the reality is that N.J.W. was adjudicated delinquent for

committing delinquent acts. Our analysis, however, does not end there.

Following his adjudication and disposition, N.J.W. chose to file a

post-dispositional motion for reconsideration challenging the weight of the

evidence pursuant to Pa.R.J.C.P. 620(1). The purpose of Rule 620 "is to

promote the fair and prompt resolution of all issues relating to admissions,

adjudication, and disposition" of the delinquency matter. ***See***

Pa.R.J.C.P. 620, cmt. At the hearing, N.J.W. also presented the social summary report, which was prepared after the adjudication. The trial court deemed the social summary report to be "after-discovered evidence." (Trial court opinion, 1/11/17 at 7.) We note that although Pa.R.J.C.P. 620(F) provides that "[a] motion for a new adjudication on the grounds of after-discovered evidence shall be filed in writing promptly after such discovery," because N.J.W. sought a reversal of the delinquency finding and dismissal of the charges, as opposed to a new adjudication, nothing in the rule prohibited him from presenting the social summary report to the trial court at the motion for reconsideration hearing. Moreover, "[j]uvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings." *See Hale*, 85 A.3d at 584 (citations omitted). "[J]uvenile hearings [are] non-adversarial, informal proceedings, where the strict rules of evidence and procedure [are] relaxed and in which the judge could analyze the child's needs and fashion the best possible remedy." *Id.* (citations omitted).

Here, the trial court reconsidered the facts of the case and also considered the social summary report to arrive at the conclusion that the after-discovered evidence "debunked I.F. and A.D.'s testimony", the Commonwealth failed to prove N.J.W. delinquent beyond a reasonable doubt, and that the interest of justice required that the adjudication be reversed and the charges dismissed. (*See* notes of testimony, 11/21/16 at

7-8; *see also* trial court opinion, 1/11/17 at 6-7.)  Our review of the record compels the conclusion that the trial court effectuated the purpose of the Juvenile Act, which is "to provide for the just determination of every delinquency proceeding."  *See* Pa.R.J.C.P. 101(A).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2017