J-S55010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.T.S-W. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.T.S-W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 104 WDA 2019 |

Appeal from the Order Dated December 4, 2018
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0002254-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED NOVEMBER 07, 2019**

A.T.S.-W. (Appellant) appeals from the dispositional order[1] entered after the juvenile court adjudicated him delinquent of two counts of theft by deception and two counts of forgery.[2]  On appeal, Appellant presents a single issue challenging the sufficiency of the evidence sustaining his adjudications. Appellant asserts that the Commonwealth "failed to prove beyond a reasonable doubt that [Appellant] intentionally or knowingly passed counterfeit twenty-dollar bills".  Appellant's Brief at 5.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent.  ***See Commonwealth v. S.F.***, 912 A.2d 887, 888-89 (Pa. Super. 2006).

[2] 18 Pa.C.S.A. §§ 3922(a)(1) and 4101(a)(3).

Pertinent to our review, the juvenile court recounted the evidence presented at Appellant's hearing as follows:

The Commonwealth called the three Penn Hills School District Cafeteria workers who interacted with and received the counterfeit twenty-dollar bills from [A]ppellant[:] Carmen Wilkes, Maria Turchick, Debra Crosmun, as well as the Penn Hills High School Principal, Eric Kostic. The Assistant Public Defender called [A]ppellant to testify.

Carmen Wilkes testified that she is a food service worker at Penn Hills High School. She indicated that she was working on October 29, 2018 in the snack bar area of the cafeteria, which is where students can come to purchase the a la carte items, such as drinks, chips or cookies. Ms. Wilkes indicated that there are three lunch periods during the day and that she was working the snack bar register for the first lunch period of the day, which starts at 10:07 a.m. Ms. Wilkes testified that some students will come to her at the outset of the lunch period to ask for change; however, often times she normally won't have change and she will tell the students to come back later.

On the day in question, Ms. Wilkes indicated that [A]ppellant came to her register and asked for change for a twenty dollar bill. Ms. Wilkes, not having change yet, told him to come back and see her later in the lunch period. Id. Ms. Wilkes testified that at the beginning of the next lunch period, which starts around 10:50 a.m., she saw [A]ppellant at another lunch cashier register and she told him to come over because she had change at that time. Ms. Wilkes stated that [A]ppellant purchased a dollar drink from the snack bar, using a twenty dollar bill, and she gave him nineteen dollars in change.

Ms. Wilkes testified that after this exchange with [A]ppellant she learned from her fellow cafeteria worker and witness, Debra Crosmun, and that [A]ppellant had a similar request for change for a twenty dollar bill. Ms. Wilkes testified she learned that the twenty dollar bill [A]ppellant used in his exchange with Ms. Crosmun was determined to be fake via the counterfeit bill marker. Concerned about the authenticity of the twenty dollar bill that [A]ppellant gave her, Ms. Wilkes testified that she then tested the twenty dollar bill she received with the counterfeit bill marker.

The twenty dollar bill that Ms. Wilkes tested from [A]ppellant was also determined to be fake using the counterfeit bill marker.

Furthermore, Ms. Wilkes stated that in the course of her normal job duties that she only receives one or two twenty dollar bills on any given day, as the snack bar items are inexpensive and students use smaller bills. On the day in question, Ms. Wilkes testified [she] had only received one twenty dollar bill from [A]ppellant, which she determined was fake using the counterfeit bill marker. The Commonwealth showed Ms. Wilkes two twenty dollar bills, labeled and entered into evidence as Commonwealth Exhibits 1 and 2 without objection, and she confidently identified the actual bill handed to her by [A]ppellant, which had the counterfeit pen markings she made on that day.

Debra Crosmun testified that she is employed by the Penn Hills School District in food services and works in the high school as a cashier. Ms. Crosmun testified that she is assigned to work at cashier line number six, which is next to where Ms. Wilkes works as a cashier at line number five. Ms. Crosmun testified [A]ppellant came and asked for change for a twenty, handing her a twenty dollar bill, which she swiped with the counterfeit marker and immediately deemed it fake. She stated this was about ten minutes into the second lunch period on the day in question. Ms. Crosmun testified that she told [A]ppellant "this is not real" and then gave the fake twenty dollar bill back to him. Ms. Crosmun, in reviewing the two twenty dollar bills admitted as Commonwealth's Exhibit 1 and 2, indicated that neither bill was the same bill that [A]ppellant had given to her on the day in question and that she knew this because she used a counterfeit pen marker leaving marks on both ends of the bill.

Marie Yurchick testified that she is employed by the Penn Hills School District, where she is a cashier in line number two in the high school cafeteria. Ms. Yurchick further clarified that cashier lines one through four are for regular lunch item purchases, which is where she works, and that cashier lines five and six are for snack bar items only.

Ms. Yurchick testified that at some point during the second lunch period, perhaps around 10:50 or 10:55, Appellant approached her and asked her for change for a twenty dollar bill. Ms. Yurchick testified that in her experience it's uncommon for a student to ask for change without purchasing any food items. She

testified that [A]ppellant did not purchase any items and was only seeking change for his twenty dollar bill, which she gave to him. Ms. Yurchick testified that, "After I gave him the change and he left I checked it." Ms. Yurchick reported that she used the counterfeit bill marker on the bill, which turned black, revealing it to be fake.

In reviewing both bills labeled Commonwealth Exhibit 1 and 2, Ms. Yurchick clearly identified Exhibit 1 as being the twenty dollar bill she received from [A]ppellant and marked with the counterfeit pen on the day in question. After determining that she had received a fake twenty dollar bill, Ms. Yurchick testified that she showed it to her supervisor, Maria Miller, who in turn took it to the principal, Mr. Eric Kostic. In her ten years of employment with the district, Ms. Yurchick said this was the first time she had ever received a fake bill.

All three cafeteria cashier witnesses positively identified [A]ppellant in the courtroom as the individual who received change, or attempted to get change, for a twenty dollar bill on October 29, 2018.

Eric Kostic testified that he is employed as the principal of Penn Hills High School. Mr. Kostic stated he was working on October 29, 2018 when cafeteria supervisor, Maria Miller, brought to him two twenty dollar bills that were deemed to be fake using the counterfeit bill marker and [A]ppellant was identified as the individual who had passed these twenty dollar bills. Mr. Kostic reviewed Commonwealth Exhibit 1 and 2, and confirmed that both items of evidence were the twenty dollar bills he received that day. Mr. Kostic stated that he could see the twenty dollar bills were counterfeit based both on the counterfeit pen markings and because they had the word "replica" printed on two different locations on each bill.

Mr. Kostic testified that he called police because it constituted a Level 4 Violation pursuant to the Penn Hills School District Code of Conduct, which requires police intervention. Mr. Kostic also called [A]ppellant down to his office, and showed him the fake twenty dollar bills. Mr. Kostic said that [A]ppellant reported he received the fake bills when [A]ppellant had sold some things the night before and didn't specifically identify who gave him the fake bills. Mr. Kostic testified that he informed [A]ppellant

that he had a three day suspension and that the fake bills would be handed over to the police.

Mr. Kostic indicated that [A]ppellant was searched and the only money [A]ppellant had on his person was nineteen dollars in change. Mr. Kostic reported that [A]ppellant was cooperative throughout the interaction and permitted the search, which occurred at approximately 12:15 p.m. or 12:20 p.m. on the day in question.

Upon the conclusion of Mr. Kostic's testimony, the Commonwealth rested and counsel for [A]ppellant called her client to testify. [A]ppellant testified that he received the counterfeit money the day before when he sold an iPhone 5 to an individual named "Joe Notel" (phonetic) that goes to Woodland Hills High School and who he knows as "D'Bo" (phonetic). Appellant said he took a picture of the iPhone and made a post offering it for sale. Appellant said that he subsequently sold the iPhone for forty dollars and that the transaction took place around 7:30 p.m. the night before. Appellant stated that he did not look carefully at the money that evening and that he took it with him when he went to school the next day. Appellant testified that the first reason why he wanted change was because "I was thirsty. I always get a drink. Another reason is because I needed bus money to get to the house, and it only - and she had gave me a ten, a five, and four ones." After [A]ppellant's exchange of the twenty dollar bill to get the drink, he explained his next thoughts and actions by stating, "I thought - oh, I need bus money to get to the house, because I take two buses. I took two buses to get to the house. I needed bus money to get to the house."

[A]ppellant was then questioned by his attorney to whether he then exchanged the other twenty dollar bill, the third twenty dollar bill in question, to Ms. Crosmun. Appellant testified, "No. I went to two people and the third - the third - I don't know like - I didn't even go to no third person. I went to two - I only had two fake - I didn't know they were fake, first of all, but I had two fake twenty dollar bills. I didn't have no more."

Appellant further testified that he "actually only had two twenty dollar bills and about ten dollars" and that after receiving the change from Ms. Wilkes, he went to eat and kept the remaining money in his pocket. When asked when did [A]ppellant learn that the bills were counterfeit, [A]ppellant testified it was

"when she marked it, and then I'm like - because I [saw] the way she was looking, then that's when." Appellant testified that this was the first time he actually realized the bill was counterfeit and that he saw the word "replica" on it when he looked at it carefully. Appellant contended he had not looked closely at the bills prior to that.

On cross-examination by the Commonwealth, [A]ppellant testified that when he posted the iPhone for sale on Snapchat, the buyer came to his house around 7:30 p.m., and at the time of the transaction [A]ppellant had about two hundred dollars on his person, in denominations of ones, fives, tens and a couple of twenties. When asked how the forty dollar proceeds from the sale got mixed in with the other money in [A]ppellant's possession, [A]ppellant said he threw it in his front pocket with the rest of his money. The following morning, [A]ppellant testified that he wore different pants, other than the ones from the night before with all of his money. Appellant testified that he didn't know how he managed to grab the two fake twenties from his roll of two hundred dollars that were in the pants from the night before. Appellant reported when he went to school he had ten dollars, in small bills, and the two fake twenty dollar bills in his possession.

Appellant reported that it costs him two dollars and seventy five cents to take the PAT bus to school and concurs he would have used "three dollars" that he had on him to pay for the bus fare. Appellant agreed that once at school that he would have been in possession of a five dollar bill, two ones, and two fake twenty dollar bills. During the first lunch period, [A]ppellant also agreed he went to try and make change with one of the twenty dollar bills. When [A]ppellant was asked why he didn't ask to make change with the five dollar bill he had in his possession, so he could get change for the bus ride home, [A]ppellant had no clear explanation. Appellant agreed that again within the same lunch period that day, after getting nineteen dollars in change from the first twenty dollar bill he used, that he approached another cafeteria worker to make change. Appellant denied ever going to a third cafeteria worker to attempt to get change for another twenty dollar bill.

Juvenile Court Opinion, 3/13/19, at 3-12 (unpaginated) (citations to notes of testimony and footnote omitted).

After hearing the evidence and arguments from counsel, the juvenile court entered the December 4, 2018 order adjudicating Appellant delinquent and placing him on probation, with the directives that he complete a drug and alcohol evaluation, perform 50 hours of community service, and attend both the Victim Awareness program and high school. On December 14, 2018, Appellant filed a motion to reconsider disposition, which the juvenile court denied on December 18, 2018. Appellant filed this timely appeal on January 17, 2019. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant argues that the evidence was insufficient to support his theft by deception and forgery adjudications because "the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] knew that the twenty-dollar bills were not genuine, and despite this knowledge, intentionally passed them to defraud the cafeteria." Appellant's Brief at 11. Appellant asserts it was "pure speculation and conjecture" for the court to "assume" that Appellant knew the bills were counterfeit and intentionally passed them with the intent to defraud. ***Id***

In reviewing Appellant's sufficiency argument, we recognize that in juvenile proceedings, "the hearing judge sits as the finder of fact," and "[t]he weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." ***In re L.A.***, 853 A.2d 388, 391 (Pa. Super. 2004). Further,

[w]hen considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile]'s innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In the Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (citations omitted).

Appellant was adjudicated of the theft by deception, statutorily defined as follows:

**(a) Offense defined.**--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

18 Pa.C.S.A. § 3922.

Appellant was also adjudicated of forgery:

**a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is

- 8 -

facilitating a fraud or injury to be perpetrated by anyone, the actor:

. . .

(2)    utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S.A. § 4101.

Appellant correctly states that the Commonwealth "was required to prove [Appellant] *knew* that the twenty-dollar bills were fraudulent and *intentionally* passed them [with] this knowledge in order to defraud the cafeteria." Appellant's Brief at 21 (emphasis in original). However, Appellant argues that "it cannot be said that the Commonwealth proved the *mens rea* elements of Forgery and Theft by Deception beyond a reasonable doubt" because all of the witnesses, including Appellant, "agreed that the bills were not readily apparent as counterfeit," and "the uncontested testimony" was that Appellant's actions "on the day in question were ordinary and routine," and he did not "make any admissions or incriminating statements indicating he knew the bills were not genuine." *Id.* While there is truth to some of Appellant's assertions, we disagree with his legal argument.

Any conflicts or contradictions in testimony are for the juvenile court to resolve. *See, e.g., In re J.M.*, 89 A.3d 688, 692 (Pa. Super. 2014). Here, the juvenile court explained that it found the testimony of the three cafeteria workers to be credible, and to the extent their testimony was contrary to that of Appellant, the court found Appellant not credible. The court explained:

I found the all of the testimony by the cafeteria workers to be the most honest and most compelling. There was no doubt in my

- 9 -

mind that all three of the witnesses had interactions with the [A]ppellant within a small window of time on the same day where [A]ppellant knowingly uttered counterfeit twenty dollar bills in order to obtain legal tender as change. In addition, I had no reason to disbelieve the testimony of Ms. Crosmun, who after using the counterfeit bill marker and determining it to be fake, returned the replica bill to [A]ppellant and told him it was a fake. To the contrary, her testimony was quite credible because it was admission against what else she could have done, which would be to turn the counterfeit bill over to her supervisor like the other two cashiers did. It is because I fully believed the testimony of the cashiers that I then moved to consider the testimony of [A]ppellant. I found [A]ppellant's totality of his testimony to be full of holes, hard to follow, and not at all credible.

In support of the adjudications, the actual testimony, evidence, and circumstantial evidence proved the following beyond a reasonable doubt: On October 29, 2018, [A]ppellant came to Penn Hills High School with at least two and possibly three counterfeit twenty dollar bills. I observed that these twenty dollar bills were very passable bills, which of course is the purpose of counterfeit money, and that in a fast cash transaction they would easily appear legitimate. It is this court's opinion that [A]ppellant knew the bills were counterfeit and used them in an attempt to get legal tender. In believing the credible testimony of the cashiers, I also believe that at one point during the lunch period Ms. Crosmun did determine the twenty dollar bill was fraudulent using the counterfeit marker and told [A]ppellant as such, handing the bill back to [A]ppellant. While that bill never turned up as evidence later, it is because I believe that [A]ppellant knew it was no longer safe to use.

In fact, what [A]ppellant testified to and would want this court to believe is that Ms. Crosmun's entire testimony was untrue. Appellant testified that he did not realize the twenty dollar bill was counterfeit until after he left the transaction with Ms. Yurchick, where he testified, "I gave her the twenty, and then she marked it right — she marked it right after, right after. She marked it right after. I [saw] her face, like she — like that's when I'm like what are you — she's like, it's fake. I'm like what do you mean it's fake? She said it's fake." T.T. at 72.

However, this totally contradicts the credible testimony of Ms. Yurchick that she marked the bill and determined it to be

counterfeit after she made change for [A]ppellant and he had left. Ms. Yurchick testified that she never spoke to [A]ppellant, who had left with his change, to tell him it was fake. In fact, the testimony was that Ms. Yurchick immediately provided the bill to her supervisor. And again, even if I were to believe part of what [A]ppellant testified was true — that he in fact was watching her from afar when she tested it and he could tell from looking at her that she determined it was fake — at no point did [A]ppellant then return to Ms. Yurchick with the legal tender she had given him to remedy the situation, if he had not known prior it was fake.

Quite frankly, it is my opinion that the reason [A]ppellant didn't take any steps to remedy the situation is because the evidence supported that there was no question that [A]ppellant uttered a counterfeit twenty dollar bill, whereby he also created a false impression that the cashier detrimentally relied upon, in order to obtain actual money. [A]ppellant chose to testify in his own defense and it was in large part his entire testimony that further solidified the actual and circumstantial evidence before the court. My observation of [A]ppellant's testimony was that he was unable and unconvincing in even answering simple questions about how he brought two fake twenty dollar bills to school and why he was asking for change for more than one twenty dollar bill.

And as I referenced earlier, in order to have deemed any of [A]ppellant's testimony credible I would have to find the testimony of two of the three cafeteria workers to be completely untrue and I would have to reconcile [A]ppellant's own testimony, that he realized he had passed a fake twenty and obtained legal money in change but that he kept that change and did nothing to correct the situation. If nothing else, that alone served as evidence that he was without a doubt guilty of at least one count of Forgery and one count of Theft by Deception; however, the totality of the evidence before me on this date supports adjudication on two counts of each charge.

Juvenile Court Opinion, 4/5/19, at 14-17 (unpaginated).

Upon review, the record supports the juvenile court's "reasonable inference" from the evidence, a large part of which was circumstantial. *In the Interest of J.G.*, 145 A.3d at 1188. Appellant testified that he did not

know that the bills were counterfeit, and accordingly, denied having an intent to defraud the school. N.T., 12/4/18, 62-63, 76. However, he approached three separate cafeteria cashiers during the lunch period on October 29, 2018 seeking change, *i.e.*, real currency. In closing, the Commonwealth argued that the totality of Appellant's testimony "doesn't make sense," stating:

> [T]here's legitimately no reason, [Appellant] offers no reason when he testifies as to why he would have attempted to pass those other two bills but for the Commonwealth's theory is, of course, he knew they were counterfeit.
>
> That's why he passed them in a setting where it was unlikely to be detected by virtue of the chaos of the cafeteria periods with the number of students who are trying to purchase items and but for Ms. Crosmun immediately being aware that this, in fact, was a counterfeit 20 dollar bill, we might never have found out who actually passed those bills, because if she would have given him change, no one would have known that these bills were counterfeit, but [Appellant] would have approached three different cafeteria workers in one period to pass three different 20 dollar bills when he had enough change on his person to complete what he says was the reason that he passed the bills in the first place.

*Id.* at 82.

Consistent with the foregoing, including our review of the record and the arguments advanced by the Commonwealth, we find no merit to Appellant's sufficiency challenge.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/19