J-S01015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.T., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 6 WDA 2022 |

Appeal from the Dispositional Order Entered May 20, 2021
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0000018-2021


BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED: MARCH 28, 2023**

E.T. ("Appellant"), a minor, appeals from the dispositional order entered

on May 20, 2021, following his adjudication of delinquency for indecent

exposure.[1] Appellant challenges the sufficiency of the evidence supporting his

adjudication of delinquency, as well as an evidentiary ruling by the juvenile

court. After careful review, we affirm.

We glean the following factual background and procedural history from

the record. On or about the afternoon of August 24, 2020, Appellant's

grandparents were babysitting him in their home, along with four of his

cousins, including siblings E.E. and J.E. (collectively "the victims"). Appellant

was the only one of the five children who had begun attending online school

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3127(a).

for the semester, due to the COVID-19 pandemic. While Appellant was on a break from his online classes, an incident occurred between him and the victims which led to Appellant's adjudication in this matter.[2] As summarized by the juvenile court,

> [Appellant] watched a pornographic video on his phone while sitting on the couch with his cousins[, E.E. and J.E. Appellant] put his hands inside of his pants and begun [*sic*] rubbing his penis up and down in front of his two cousins. Both [E.E.] and [J.E. saw Appellant's] penis. [The victims] did not immediately notify their grandparents []or [their] parents. [E.E.] told a friend, who told her mother, and it got back to [the victims'] parents. This event has led to a division within the family, and all involved parties may need treatment.

Juvenile Court Opinion ("JCO"), 9/9/22, at 2.

On March 1, 2021, the Commonwealth filed a petition alleging delinquency, charging Appellant with one count of indecent exposure. An adjudicatory hearing was held on May 20, 2021, at which the victims were called to testify by the Commonwealth, and J.T. (Appellant's "Mother") and D.K. (Appellant's "Grandfather") testified on behalf of Appellant.[3]

The juvenile court summarized the witnesses' testimony as follows:

> [E.E.] testified that the situation that brought the parties into court occurred in late summer, early fall. [E.E.] was at her grandparents' home with … [her] brother[, J.E., Appellant, two other cousins,] and … [her] grandparents.[] [Appellant] was in

---

[2] At the time of the incident, Appellant was 14 years old. E.E. and J.E. were 11 and 9 years old, respectively. The other two children were not in the room when the incident occurred, so they are not witnesses in this case.

[3] The trial court found both E.E. and J.E. competent to testify, and sequestration was in effect for all parties who planned to testify. JCO at 3.

school [on]line at the time, but she had not started … school yet. [E.E. and J.E.] were in the same room as [Appellant]. At some point, [J.E.] had [Appellant's] phone and then [Appellant] took his phone from [J.E.]

[E.E.] continued, [stating that Appellant] had "naked women[]" on his phone. "Well, at first it was just pictures and then he started watching videos…." She testified to what she [saw] in the video, "Well, they were in like bathing suits and then they got undressed and they started kissing each other and licking each other and stuff.["] When asked to be very specific, [E.E.] clarified that the women in the video were licking each other's "privates[."] [E.E.] further testified that while the video was playing, she [saw Appellant] "moving his hand inside his pants[."] When asked if she [saw Appellant's] penis, [E.E.] responded: "He didn't pull his pants down, but we did see his—yeah."

[E.E.] credibly testified that she did not immediately notify her parents of this situation. She stated, "I told my friend." She continued, "Well, as soon as I told her, my friend's mother found out. So, my friend's mother told my mom and we had to tell…[.]"

On cross[-]examination, defense counsel confirmed from [E.E.] that there were five children and two grandparents in her grandparent[s'] home at the time. [E.E.] restated her testimony regarding the events that occurred [on] the date in question. [E.E.] and [J.E.] were sitting on the couch, and [J.E.] was using [Appellant's] phone. When asked [whether Appellant came] back to get his phone[, E.E.] responded, "No. [J.E.] asked [Appellant]…, there was a bad word on the phone, he asked him why this was here and [Appellant] said let me see that and then he started looking up that stuff." [E.E.] also confirmed that [Appellant] did not pull his pants down, but she saw his penis and that was while [they] were sitting on the couch. She also confirmed that she never told her grandparents or [her] parent[s] about the situation.

[J.E.], who had been sequestered during [E.E.'s] testimony, … testified:

[]So we were sitting in the dining room[,] and then I was just [seeing] what [Appellant] was doing[,] and then he – I was just watching him to see what he was doing[,] just watching his school to see what it was like[,] and we were there because it was our last day with him because we had to go back to school on Monday[,] and so he just – I looked

up baseball and then it said a bad word on the internet[,] and I said [to Appellant], this has a bad word and he said this and he said – and you said yeah. And then he looked it up and it went to a whole new thing. I started looking up [at] naked women and girls licking each other's butts and privates and I just didn't like it because it was uncomfortable for me and I just – I just lost his trust.

Additionally, [J.E.] answered in the affirmative that he [saw Appellant's] penis and "he was rubbing it up and down[."] Defense counsel highlighted that in October, around Halloween, [J.E.] had made a statement to a [case worker] and stated a few differences: (1) whether [J.E.] attempted to walk away, and (2) whether it happened in the dining room or on the couch.

The court found [J.E.'s] testimony creditable [*sic*] and consistent regarding the important fact of what [Appellant] watched on the phone in his presence[] and the fact that [Appellant] rub [*sic*] [his] penis in front of [the victims]. It was important to the court that [J.E.'s] testimony was aligned with [E.E.'s testimony], although … [J.E.] was not present for [E.E.'s] testimony.

Defense counsel called [Appellant's Mother]. [She] testified that [Appellant] started school [on]line on August 24th, and he has 10 to 15 minute breaks … between his [classes]. [Mother] also testified that [Appellant] had a cell phone since the 7th grade and he was now in the 9th grade. [Mother] testified that she has purchased the Verizon Smart Family [P]lan[,] and "it blocks whatever I want it to block." According to [Mother], back in August, "[i]t was set to block violence, nudity, pornography, hate, racism, self-harm and packing and – there's a couple other things that I would have to double check." She also answered in the affirmative that it is set to block pornography. On cross[-]examination, [the Commonwealth] asked[,] "Okay. Ma'am, did you provide to – do you have today the documentation for anything along those lines in terms of your settings for your phone or your Verizon plan or anything along those lines?["] [Mother] responded: "No[."] The court even sought clarification from [Mother] regarding proof of her "blocker" on her phone by asking the following questions:

The Court:    In regard to this block that you have on the phone, when did you inform [Appellant's] attorney … about that?

- 4 -

> [Mother]: From the beginning? When did I – I don't recall.
>
> The Court: Did you at any time ask Verizon for any information in regard to this app that you have on your phone?
>
> [Mother]: No.
>
> The Court: Did anyone from the District Attorney's Office talk to you about that app?
>
> [Mother]: Your Honor, I haven't spoken to anybody.
>
> The Court: Okay. All right. After you informed [Appellant's] attorney about this app, did you talk to Verizon about getting any information?
>
> [Mother]: No, I didn't.
>
> Although the court found [Mother] creditable, [*sic*] defense counsel failed to provide any evidence that should have been available to support[] [M]other's claim of the blocker app that was allegedly placed on [Appellant's] phone at the time of [the] allegations.
>
> Lastly, defense counsel called [Appellant's Grandfather]…. [Grandfather] testified that he remembered[] he and his wife had all five grandchildren at [their] house back in August. [Grandfather] testified … [:] "Just look. There's no – you don't have to climb around walls or anything. They're right there. It's all wide open." He also testified that he would check on the kids "every few minutes[."] [Grandfather] confirmed that he never heard a word from any of his grandkids regarding [Appellant's] behaviors. [Neither E.E.] nor [J.E.] had told him or his wife about the[ir] seeing "naked women" on [Appellant's] phone. He was informed weeks or months later. The court found [Grandfather's] testimony creditable [*sic*] but nothing he stated contradicted the actions of [Appellant].

*Id.* at 3-7 (unnecessary capitalization and citations to record omitted).

Based on the foregoing evidence presented at the hearing, the juvenile court adjudicated Appellant delinquent of indecent exposure. ***See***

- 5 -

Dispositional Order, 5/20/21, at 1 (finding that Appellant "is in need of treatment, supervision[,] or rehabilitation[,]" and ordering him to an indefinite period of probation). Appellant filed a timely, post-dispositional motion on May 28, 2021, challenging the sufficiency and weight of the evidence. This motion was denied by operation of law on November 30, 2021.[4] On December 30, 2021, Appellant filed a timely notice of appeal.[5] The juvenile court did not order the filing of a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Its Rule 1925(a) opinion was filed on September 9, 2022.

_____

[4] Pennsylvania Rule of Juvenile Court Procedure 620(D)(1) requires a judge to decide a post-dispositional motion within 30 days of the filing of the motion. If the judge fails to decide the motion within 30 days or to grant an extension, the motion shall be deemed denied by operation of law. Pa.R.J.C.P. 620(D)(1). In such an event, "the clerk of courts shall forthwith enter an order on behalf of the court." Pa.R.J.C.P. 620(D)(3). Here, the trial court was required to decide the motion by June 28, 2021. As the trial court failed to do so, the clerk of courts was required to enter an order denying the post-dispositional motion by operation of law; however, it did not enter such an order until November 30, 2021.

[5] In the context of criminal cases, this Court has found that the failure of the trial court to decide a post-sentence motion within 120 days and the subsequent failure of the clerk of courts to enter an order denying the motion by operation of law constitutes a breakdown in the courts; we will not find an appeal untimely under these circumstances. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003). Instantly, where the court failed to decide Appellant's post-dispositional motion by the June 28, 2021 deadline, and the order denying said motion by operation of law was not entered until November 30, 2021 – 155 days later, we conclude a breakdown in the court occurred. Moreover, because Appellant filed his notice of appeal within 30 days of the order denying his post-dispositional motion by operation of law, we deem the notice of appeal to be timely filed.

- 6 -

Herein, Appellant presents the following issues for our review, which we have reordered for ease of disposition:

I.    Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that [Appellant] possessed the requisite *mens rea* to sustain a disposition for [i]ndecent [e]xposure?

II.   Did the [juvenile] court err in preventing [Appellant] from introducing cell phone evidence at trial to refute the veracity [of] his cousin[s'] testimony?

Appellant's Brief at 6.

We begin by noting that, "[t]he Juvenile Act[6] grants juvenile courts broad discretion when determining an appropriate disposition.... We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." **In re C.A.G.**, 89 A.3d 704, 709 (Pa. Super. 2014) (citation omitted). Moreover, it is clear that "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." **In re L.A.**, 853 A.2d 388, 391 (Pa. Super. 2004).

In his first issue, Appellant challenges the sufficiency to support his adjudication of delinquency for indecent exposure.

> When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:
>
> > When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of

---

[6] 42 Pa.C.S. §§ 6301-6575.

delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348-[]49 (Pa. Super. 2013) (quoting *In re A.V.*, 48 A.3d 1251, 1252-[]53 (Pa. Super. 2012)). The finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa. Super. 2010).

*In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016).

Instantly, Appellant argues that the Commonwealth failed to establish that he possessed the *mens rea* necessary to sustain a disposition for the offense of indecent exposure. Appellant's Brief at 31. Pursuant to the Crimes Code, "[a] person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S. § 3127(a). Specifically, Appellant states that the requisite *mens rea* to support a conviction for indecent exposure is "knowingly," which is defined by the

Crimes Code as follows: "A person acts knowingly with respect to a material element of an offense when[,] … if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist[.]"  Appellant's Brief at 32 (quoting 18 Pa.C.S. § 302(b)(2)(i)).  Additionally, the Crimes Code provides that "[w]hen acting knowingly suffices to establish an element [of an offense], such element also is established if a person acts intentionally."  18 Pa.C.S. § 302(e). Therefore, Appellant argues that the finding of his delinquency "turns upon whether [he] knowingly or intentionally exposed his genitals in a manner he knew or should have known was likely to offend, affront[,] or alarm." Appellant's Brief at 32.  Appellant avers, however, that even if we accept the totality of the victims' testimony as true, "such testimony merely establishes that [the victims] viewed [Appellant's] hands moving inside his pants, not that he knowingly exposed his genitals as necessitated by the statute." ***Id.***

Contrarily, the Commonwealth argues that the evidence was clearly sufficient to prove the requisite elements of indecent exposure beyond a reasonable doubt.  Commonwealth's Brief at 18.  First, the Commonwealth notes that the victims repeatedly testified that they saw Appellant's penis while sitting next to him on the couch.  ***Id.*** (citing N.T., 5/20/21, at 14-15, 27, 30 (E.E.'s testifying that she saw Appellant's penis); N.T. at 37 (J.E.'s confirming that he saw Appellant's penis and that Appellant was "rubbing it up and down")).  Additionally, the Commonwealth argues that the evidence

establishes that Appellant "knew or should have known that his conduct was likely to cause offense or alarm." ***Id.***

> First, [A]ppellant was fourteen at the time of the incident. A fourteen[-]year[-]old is certainly old enough to know that masturbating in front of his nine[-]year[-]old and eleven[-]year[-]old cousins is inappropriate and would likely cause them alarm or offense. Second, E.E. told [A]ppellant that she would tell on him if he did not stop what he was doing.[7] This is evidence that E.E. was uncomfortable with what was going on and, just as importantly, it is evidence that this discomfort was conveyed to [A]ppellant during the incident. Appellant's response to E.E. was also telling; he was both defiant and threatening, saying that he "didn't care," but also that if … E.E. did say something, that he would "do" something to her.[8]

***Id.*** at 18-19 (citations to record omitted).

At the close of the delinquency hearing, the juvenile court stated on the record that it found both E.E. and J.E. to be credible witnesses. N.T. at 73. ***See also Gainer***, 7 A.3d at 292 (stating that the fact-finder is free to believe some, all, or none of the evidence presented). It acknowledged that there was some dispute back and forth about what precisely was on Appellant's phone, but it emphasized that there was no evidence to dispute the victims' testimony regarding Appellant's actions and their seeing his exposed penis.

---

[7] ***See*** N.T. at 16 (E.E.'s stating, "I said I was going to tell on him if he didn't stop and he said he doesn't care").

[8] ***See*** N.T. at 16 (E.E.'s testifying, "I said … I'm going to tell someone if you don't stop because I don't think this is right[,]" and "[h]e said if you do, I'm going to do something to you, but I don't remember what he said he was going to do"). ***See also id.*** at 37 (J.E.'s recalling that "when we were done watching [the videos], [Appellant] said if you tell, I'm going to do something to you").

N.T. at 73-74. The juvenile court concluded that the Commonwealth met its burden of proof, and it found Appellant delinquent of indecent exposure. *Id.* at 74.

In support of its decision, the court further explained in its Rule 1925(a) opinion that it found Appellant's Mother and Grandfather to be credible witnesses, as well. JCO at 11. However, it stated that "nothing in their testimony disproves or disputes [the victims'] testimony." *Id.* Accordingly, the court opined that it "believes [E.E.] and [J.E.] witness[ed] [Appellant] rub his penis up and down while watching pornographic videos." *Id.* After careful review of the record and viewing the evidence in the light most favorable to the Commonwealth, we discern no error or abuse of discretion in the juvenile court's finding Appellant delinquent of indecent exposure. Thus, no relief is due on this claim.

Next, Appellant challenges the juvenile court's denial of his request to admit evidence at the adjudicatory hearing. We begin by noting our standard of review. "Admissibility of evidence is within the sound discretion of the juvenile court[,] and we will not disturb an evidentiary ruling absent an abuse of that discretion." *Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). "Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Gonzalez*, 109 A.3d 711, 726 (Pa. Super. 2015) (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Here, Appellant claims that the juvenile court erred in preventing him from introducing Mother's cell phone at trial as evidence to refute the veracity of the victims' testimony. Appellant's Brief at 17. Appellant avers that "[t]he [juvenile] court's decision to limit the admissibility of cell phone evidence was a clear misapplication of the law, which had a demonstrable prejudicial impact on [Appellant's] defense." *Id.* He reasons that the Commonwealth's case rested entirely on the victims' testimony, and that much of their testimony was regarding their seeing pornography on Appellant's phone. *Id.* Appellant suggests that the victims' testimony "cannot be true, as the functionality of [Appellant's] phone was limited by his parents and the phone company[. B]ecause of this additional security, it would be impossible to view porn on [Appellant's] phone." *Id.* He adds that, "[h]ad the [juvenile] court not

refused to consider this evidence, the implausibility of the [victims']
testimonies would have been readily apparent." **_Id._**

Appellant's contentions are based on the following, limited exchange
which took place at the end of Mother's testimony:

| | |
|---|---|
| [Appellant's Counsel]: | Your Honor, I would ask permission for [Mother] to open her cell phone and show it to the [c]ourt if the [c]ourt is – |
| The Court: | At this point, unless [the prosecution] wants to see it, I don't need to see it. |
| [Appellant's Counsel]: | Okay. I would call [Appellant's] grandfather…. |
| The Court: | Just so we're clear, the prosecution always has to provide such evidence ahead of time to look at it and secure it and that also goes for the defense. |
| [Appellant's Counsel]: | Well, your Honor, there is not reciprocal discovery in Pennsylvania. |
| The Court: | I understand. Sir, you have a seat right here. |

N.T. at 55-56.

Based on the foregoing, Appellant jumps to the conclusion that the
juvenile court "barred defense counsel from presenting evidence of the
pornography[-]block[ing] software on [Appellant's] phone **solely** because
that evidence had not been previously shared with the Commonwealth."
Appellant's Brief at 19 (emphasis in original). He avers that, in doing so, the
court misrepresented Appellant's pretrial duty to share evidence with the
Commonwealth, as set forth in Pa.R.Crim.P. 573, which governs pretrial
discovery and inspection. **_See id._** ("Nowhere in Rule 573(C) is there mention

of any evidentiary disclosure requirement imposed on defendants that is reciprocal to or mirroring that of the Commonwealth's disclosure duties.").[9]

We consider Appellant's focus on Rule 573 to be a red herring, as nothing in the record indicates the juvenile court denied Appellant's request to admit "cell phone evidence" based on a discovery violation.[10] Given the context of the exchange, rather, we are inclined to agree with the Commonwealth that the juvenile court simply did not "need to see" Mother's cell phone because the judge's viewing of the parental control app on her phone – absent any documentation regarding when the app was purchased and installed – would have added no probative value to Appellant's defense. **See** Commonwealth's Brief at 16. There is nothing in the record to indicate that the court had any doubt regarding the existence of the parental control app on Mother's phone at the time of the hearing; however, it is apparent that the court was seeking evidence to support Mother's contention that the app had been installed at the time of the incident, back in August of 2020.

_____

[9] Pennsylvania Rule of Criminal Procedure 573(C) delineates what the defense must disclose to the Commonwealth and what a trial court has the discretion to require the defense to disclose to the Commonwealth. **See Commonwealth v. Kennedy**, 876 A.2d 939, 946 (Pa. 2005) (citing Pa.R.Crim.P. 573(C)). **See also** Pa.R.Crim.P. 573(B) (delineating the Commonwealth's pretrial disclosure duties).

[10] We note that no pretrial discovery request was made by the Commonwealth for Mother's cell phone records. **See** Commonwealth's Brief at 9 n.3 (explaining "the Commonwealth did not need to subpoena any such documentation; it had two eyewitnesses to this incident, which was more than enough to prove its case").

For instance, after Mother admitted on cross-examination that she did not have with her any documentation regarding the settings for the parental control app on her phone or payment for the Verizon Smart Family Plan, **see** N.T. at 51,[11] the juvenile court explained that it

> sought clarification from [Mother] regarding proof of her "blocker" on her phone by asking the following questions:

> The Court: In regard to this block that you have on the phone, when did you inform [Appellant's] attorney … about that?

> [Mother]: From the beginning? When did I – I don't recall.

> The Court: Did you at any time ask Verizon for any information in regard to this app that you have on your phone?

> [Mother]: No.

> The Court: Did anyone from the District Attorney's Office talk to you about that app?

> [Mother]: Your Honor, I haven't spoken to anybody.

> The Court: Okay. All right. After you informed [Appellant's] attorney about this app, did you talk to Verizon about getting any information?

> [Mother]: No, I didn't.

JCO at 6-7 (citation to record omitted). Significantly, the juvenile court opined: "Although the court found [Mother] creditable, [*sic*] defense counsel failed to provide any evidence that should have been available to support[]

---

[11] **See also id.** at 52 (Mother's confirming on re-direct that she did not have such documentation but that she could "pull up" the app on her phone and "show it to the judge if he wanted to see it").

[M]other's claim of the blocker app that was allegedly placed on [Appellant's] phone at the time of [the] allegations." *Id.* at 7.

The juvenile court was well within its discretion to decline the opportunity to view Mother's cell phone where Mother had already testified to having a parental control app on her phone, the court found her testimony to be generally credible, and viewing her phone would have served only one purpose – to confirm the existence of the app and its settings as of the hearing date. It would not have added any probative value to Mother's claim that the app had been installed prior to the date in question and that the pornography-blocking settings were activated at the time of the incident. *See* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of … wasting time[] or needlessly presenting cumulative evidence."). Thus, we deem Appellant's claim meritless.

Nevertheless, even if the juvenile court were deemed to have excluded Mother's cell phone in error, we would reject Appellant's contention that "by precluding the admission of cell phone evidence, [he] was prevented from contradicting [the victims'] testimony[.]" Appellant's Brief at 25. To the contrary, as explained in the foregoing, the evidence in question would not have had the desired effect of disproving the victims' testimony. Rather, it would have only bolstered Mother's testimony that the parental control app was installed on her phone as of the hearing date. Thus, we would conclude that such error was harmless, and that no relief is due. *See Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) ("[H]armless error exists where …

the error did not prejudice the defendant or the prejudice was *de minimis*[.]")
(citation omitted); **Commonwealth v. Young**, 748 A.2d 166, 193 (Pa. 1999)
(stating that an erroneous ruling by a trial court on an evidentiary issue does
not require an appellate court to grant relief where the error was harmless).

Based on the foregoing, we affirm the order adjudicating Appellant
delinquent.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/28/2023